**Opinion filed November 10, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00268-CV

_____

## IN RE THE STATE OF TEXAS EX REL. MICHAEL MUNK

**Original Mandamus/Prohibition Proceeding**

## O P I N I O N

Relator, the State of Texas, acting by and through the Gaines County District Attorney, Michael Munk, has filed a petition for writ of mandamus with this court alleging that Respondent, the Honorable Carter T. Schildknecht, Judge of the 106th District Court of Gaines County, Texas, has abused her discretion by ordering the State to conduct criminal history searches of all non-law enforcement witnesses in various state and federal databases and to provide the results of those searches to the defendant. The State also seeks a writ of prohibition preventing Respondent from ordering the State, absent a showing of good cause, to run and provide criminal histories of all witnesses in any future cases. Additionally, the State requested an emergency or temporary stay of the proceedings. We granted the

State's requested emergency stay in a separate written order entered on October 13, 2014. For the reasons expressed herein, we conditionally grant the petition for writ of mandamus in part, and we deny the petition for writ of prohibition.

*Background Facts*

The order that is the subject of this original proceeding arises from an order entered in trial court cause numbers 14-4486 and 14-4487 styled *State of Texas v. Desirae Monique Mata*. Mata is charged with the offenses of capital murder and murder in the underlying proceedings. Respondent entered the challenged order during a pretrial hearing that occurred on October 2, 2014. Mata's attorney presented the following oral request to the trial court at the hearing:

> I have received a witness list from the State, and I really need for them to provide us with copies of criminal records of numerous witnesses that are not law enforcement. Specifically one witness by the name of Angie Brown, because we need to get copies of criminal convictions, judgments and sentences certified.
>
> She's a witness from out of state, and I don't have complete access to all her criminal history, but she does have a lengthy criminal history. And I don't want to get into a situation where I'm asking the Court for a continuance because during the time of trial, I find out that she used another name and I have another criminal conviction that I didn't know about.

Respondent granted this request by ordering that "[t]he State is to provide the criminal histories of non-law enforcement witnesses to the defense." Respondent ordered that the criminal histories were to be produced prior to the next pretrial hearing that was set for October 16, 2014.

The State filed its petition for writ of mandamus and writ of prohibition on October 6, 2014. On October 7, 2014, we requested a response to the petition. Mata filed a response on October 10, 2014. On October 13, 2014, we issued our order granting an emergency stay. We also set the matter for oral argument on

October 16, 2014. On the day prior to oral argument (October 15, 2014), Mata filed a motion to dismiss this proceeding on the ground of mootness. Mata's motion to dismiss remains pending before this court.

*Mata's Motion to Dismiss*

Mata contends that the State's petition for writ of mandamus is moot because defense counsel had received a letter from the prosecutor indicating that the criminal histories of approximately seven of the State's fifty-four non-law enforcement witnesses were in the process of being produced at the time Mata filed the motion to dismiss. We disagree with Mata's contention that the State's petition for extraordinary relief is now moot. A case becomes moot if the controversy no longer exists between the parties. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). The controversy at issue in this proceeding continues to exist because Mata has not shown that she has withdrawn her discovery request for the criminal histories of all non-law enforcement witnesses and has not shown that Respondent has withdrawn her order requiring the State to obtain the criminal histories of all non-law enforcement witnesses and provide them to the defense. In this regard, Mata states in her motion to dismiss that "there are still other non-law enforcement Criminal histories that have not yet been provided." Accordingly, we overrule Mata's motion to dismiss.

*Mandamus Analysis*

Mandamus is appropriate in a criminal proceeding when the relator establishes (1) "that he has no adequate remedy at law to redress the harm that he alleges will ensue" and (2) "that the act he seeks to compel or prohibit does not involve a discretionary or judicial decision." *Simon v. Levario*, 306 S.W.3d 318, 320 (Tex. Crim. App. 2009) (orig. proceeding); *see State ex rel. Hill v. Court of Appeals for the Fifth Dist.*, 34 S.W.3d 924, 927 (Tex. Crim. App. 2001) (orig. proceeding). An oral order may be the subject of mandamus relief if the court's

3

ruling is a clear, specific, and enforceable order that is adequately shown by the record. TEX. R. APP. P. 52.3(k)(1)(A); *see In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding). An appeal from a final judgment will not protect the State from having to produce improper discovery. *See Dickens v. Court of Appeals for Second Supreme Judicial Dist. of Tex.*, 727 S.W.2d 542, 548 (Tex. Crim. App. 1987) (orig. proceeding).

The State argues that the trial court exceeded its authority under the former version of TEX. CODE CRIM. PROC. art. 39.14[1] by ordering the State to conduct an independent investigation by searching the National Crime Information Center and the Texas Crime Information Center (NCIC/TCIC) databases for the criminal histories of non-law enforcement witnesses and providing the results of those searches to the defense.

There are two significant facts that we note at the outset of our analysis. First, this case involves the law of discovery as it existed prior to January 1, 2014, when the Michael Morton Act became effective and significantly changed discovery procedure. *See* Michael Morton Act, 83rd Leg., R.S., ch. 49, 2013 Tex. Gen. Laws ___ (codified as CRIM. PROC. art. 39.14). In this regard, the changes made by the Michael Morton Act only apply to offenses committed after January 1, 2014. *Id.* The underlying offenses are alleged to have occurred prior to January 1, 2014. Accordingly, we express no opinion on the possible effect of the changes made by the Michael Morton Act on the discovery issue presented by this original proceeding.

The second significant fact affecting our analysis are two recent opinions issued by the Dallas Court of Appeals conditionally granting mandamus relief regarding similar discovery orders. *In re Watkins*, 367 S.W.3d 932 (Tex. App.—

---

[1]*See* Act of May 18, 2009, 81st Leg., R.S., ch. 276, § 2, 2009 Tex. Gen. Laws 733 (current version at TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2014)).

Dallas 2012, orig. proceeding) (*Watkins I*), involved a standard discovery order requiring the State to obtain criminal histories from NCIC/TCIC records of the State's witnesses and to provide them to the defense. The court held in *Watkins I* that former Article 39.14 was "definite, unambiguous, and unquestionably [applied] to the indisputable facts of [the] case." 367 S.W.3d at 933 (quoting *Simon*, 306 S.W.3d at 321). The court further held that the trial court had no discretion to disregard former Article 39.14. *Id.* The court concluded in *Watkins I* that the trial court's order circumvented the former version of Article 39.14 because the defendant was not required to file a motion and show good cause before being entitled to discovery.[2] *Id.*

*In re Watkins*, 369 S.W.3d 702 (Tex. App.—Dallas 2012, orig. proceeding) (*Watkins II*), involved an order by the trial court requiring the State to conduct an independent investigation of criminal histories of law enforcement witnesses by initiating searches of the NCIC database and to provide the results of those searches to the trial court for inspection. 369 S.W.3d at 704. The court held in *Watkins II* that the trial court exceeded its authority under former Article 39.14 because there was (1) no oral or written request for the criminal history records, (2) no oral or written showing of good cause for those records, (3) no oral or written showing why those records are material to the defense, and (4) no oral or written showing that those records are in the State's possession. *Id.* at 707. As set forth below, the court's analysis is more fully developed in *Watkins II*.

The discovery orders that were at issue in *Watkins I* and *Watkins II* are similar to the one at issue in this proceeding because the Respondent's order requires the State to obtain criminal histories of witnesses from the same databases and to provide them to the defense. We acknowledge that there are some factual

---

[2]The court additionally stated that the discovery order in *Watkins I* appeared to require production of more than is required under *Brady v. Maryland*, 373 U.S. 83 (1963). However, the court did not elaborate on its basis for concluding that the discovery order exceeded the requirements of *Brady*.

differences between this proceeding and the facts in *Watkins I* and *Watkins II*. Most notably, Mata presented Respondent with a request for production of the criminal history records. Accordingly, this factor in the court's analysis in *Watkins I* and *Watkins II* is inapplicable to the facts in this proceeding.[3] As was the case in *Watkins II*, we direct our focus on the possession element.

After Respondent granted Mata's request, the prosecutor asked Respondent if the criminal histories must be produced whether or not they are currently in the State's possession. Respondent replied in the affirmative to the prosecutor's request for clarification. The court held in *Watkins II* that neither *Brady* nor former Article 39.14 imposes a duty upon the State to obtain information from the NCIC database that it has not already obtained. *Id.* at 706.

We agree with the Dallas Court of Appeals that the trial court does not have authority under former Article 39.14 to require the State to conduct criminal history searches of the NCIC/TCIC databases or to provide information to the defendant from these databases that it has not already obtained. Former Article 39.14 is a limited discovery statute requiring the defendant to show good cause, materiality, and possession of the discoverable item by the State. *State ex rel. Wade v. Stephens*, 724 S.W.2d 141, 144 (Tex. App.—Dallas 1987, orig. proceeding) (citing *Hoffman v. State*, 514 S.W.2d 248, 252 (Tex. Crim. App. 1974)). It does not give the defendant a general right to discovery. *Id.* (citing *Whitchurch v. State*, 650 S.W.2d 422, 425 (Tex. Crim. App. 1983)). The Dallas Court of Appeals determined in *Watkins II* that former Article 39.14 does not give the trial court authority to order the State to create a document that does not

---

[3]Additionally, Mata asserted at oral argument that *Watkins II* is also distinguishable because it involved the criminal histories of law enforcement witnesses; Mata limited her request to the criminal histories of non-law enforcement witnesses. This is a distinction without a difference because the status of the witnesses as either law enforcement or non-law enforcement had no bearing on the court's analysis in *Watkins II*.

currently exist. *Watkins II*, 369 S.W.3d at 706–07. We agree with the court's conclusion in *Watkins II* that requiring the State to conduct searches for criminal histories in computer databases involves the creation of documents that do not currently exist and are not in the State's possession. We also agree with the court's conclusion that *Brady* does not require the State to conduct criminal history searches in the NCIC/TCIC databases. *See Watkins II*, 369 S.W.3d at 706. The *Brady* requirements only apply to information "known" to the State. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *see Hafdahl v. State*, 805 S.W.2d 396, 399 (Tex. Crim. App. 1990) (*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.). The State is not required under *Brady* to seek out exculpatory evidence independently on the defendant's behalf. *United States v. Bagley*, 473 U.S. 667, 675 (1985); *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). The Supreme Court stated in *Bagley* that the purpose of the *Brady* rule is not to displace the adversary system as the primary means by which truth is uncovered, but only to ensure that a miscarriage of justice does not occur. 473 U.S. at 675. We conclude that requiring the State to conduct criminal history searches exceeds the requirements of *Brady* because the State would be required to independently seek out exculpatory evidence on behalf of the defendant.

Mata cites *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980), for the proposition that the State's access to criminal history databases equates to possession. We first note that *Auten* did not involve an application of former Article 39.14. Additionally, we disagree with the *Auten* court's conclusion that access to information is the same thing as possession of the information. Individuals have access to a plethora of information (and images) via the internet, including matters that are inherently criminal in nature. However, the fact that one

may have access to information does not mean that the person has possession of all information that he or she could potentially access. Furthermore, access to information does not equate to knowledge that the information exists, which is a component under *Brady*.

We are mindful that the Amarillo Court of Appeals recently rejected mandamus relief sought by the State from a discovery order that appears to be similar to the one at issue in this appeal. *See In re Munk*, No. 07-14-00308-CV, 2014 WL 4082109 (Tex. App.—Amarillo Aug. 15, 2014, orig. proceeding) (mem. op.). At first blush, it might appear that the Amarillo court in *Munk* disagreed with the holding in *Watkins I* and *Watkins II*. However, the court did not address either *Watkins I* or *Watkins II* in its analysis. Furthermore, a close reading of the opinion in *Munk* reveals that the court there considered the language of the trial court's order that was before it to be different from the language before the court in the *Watkins* cases and in the case before us. In *Munk*, the defendant had asked that the State be ordered to furnish the defendant with a list of witnesses and also the criminal history of any witness that the State intended to call. 2014 WL 4082109, at *3. The State argued that the effect of the trial court's order was to require the State to run a criminal history "on all of its non-law enforcement witnesses." *Id.* In its opinion in *Munk*, the Amarillo court did not consider that the trial court's order went that far, stating, "[W]e do not see the language in [the trial court's] order of which Relator specifically complains." *Id.* The Amarillo court then immediately turned its attention to *Brady*-type materials and also cited to Rule 609 of the Texas Rules of Evidence (Impeachment by Evidence of Conviction of Crime). The court then wrote that the trial court's order "is an order consistent on its face with the prosecutorial duty imposed on [the State] under current applicable law and is, therefore, not an abuse of discretion." *Id.*

We do not believe that the Amarillo court's opinion in *Munk* is at odds with the opinions in *Watkins I* and *Watkins II*. In *Watkins I* and *Watkins II*, the State was specifically ordered to search for the records from the same databases as the ones from which the trial court ordered the State to use here. In the case before us, the State asked the trial court whether it must obtain and produce the criminal histories whether they were currently in the State's possession or not. The trial court was very specific when it answered in the affirmative. It does not appear that the Amarillo court thought it had the type of language before it as before the court in *Watkins I* and *Watkins II* and as in the trial court order now before us, which required the State to search for the criminal histories. Therefore, based upon the statements of the Amarillo court, we do not believe that *Munk* is necessarily at odds with our opinion in this case.

The remaining question to address is the appropriate remedy to ensure compliance with *Brady*. In *Watkins II*, the court stated as follows in acknowledging the protections afforded by *Brady*:

> The State has a constitutional obligation to disclose evidence favorable to the defendant whether or not the defendant requests it. *Brady*, 373 U.S. at 87–89, 83 S.Ct. 1194; *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). This includes evidence that may be used to impeach a witness's credibility. *Bagley*, 473 U.S. at 676, 105 S.Ct. 3375. One way to impeach a witness is by introducing evidence of a prior criminal conviction of that witness. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). To the extent the State obtained information containing *Brady* material, including from NCIC records, the State was obligated to disclose that information. *Brady*, 373 U.S. at 87–89, 83 S.Ct. 1194; *Bagley*, 473 U.S. at 676, 105 S.Ct. 3375.

369 S.W.3d at 706. We agree with the court's holding that the State has an obligation to provide *Brady* materials that it may have already obtained from the NCIC/TCIC databases. Accordingly, we decline to grant mandamus relief against

9

Respondent's discovery order for the production of any criminal histories that the State already has in its possession or any criminal histories that the State may obtain in the future by its own volition. In this regard, the State includes, in addition to the prosecutor, other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case. *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012). However, to the extent that Respondent's discovery order requires the State to conduct criminal history searches using the NCIC/TCIC databases and to provide the results of those searches to Mata, we conditionally grant the State's petition for writ of mandamus. A writ will issue only if Respondent fails to vacate her October 2, 2014 order to the extent that the order requires the State to conduct criminal history searches of the NCIC/TCIC databases and to provide the results of those searches to Mata. Our emergency stay of all proceedings in the trial court in the underlying cases shall remain in place until Respondent vacates that portion of her October 2, 2014 discovery order under the terms provided herein.

*Writ of Prohibition*

The State also seeks a writ of prohibition to prohibit Respondent from entering the challenged discovery order in future cases. As noted by the Amarillo Court of Appeals, the writ of prohibition is a creature of limited purpose that is appropriate only after an appellate court's jurisdiction has been invoked on independent grounds and then only in aid of that jurisdiction. *In re Munk*, 2014 WL 4082109, at *4–5 (citing *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 683 (Tex. 1989) (orig. proceeding); *Tex. Emp'rs' Ins. Ass'n v. Kirby*, 152 S.W.2d 1073, 1073 (Tex. 1941); and *In re Lewis*, 223 S.W.3d 756, 761 (Tex. App.— Texarkana 2007, orig. proceeding)). An appellate court does not have jurisdiction, absent actual jurisdiction of a pending proceeding, to issue a writ of prohibition requiring that a trial court refrain from performing a future act. *Id.*; *see In re*

*Nguyen*, 155 S.W.3d 191, 194 (Tex. App.—Tyler 2003, orig. proceeding); *Lesikar v. Anthony*, 750 S.W.2d 338, 339 (Tex. App.—Houston [1st Dist.] 1988, orig. proceeding).

As was the case in *Munk*, the State has not identified a pending proceeding over which this court has jurisdiction and by which this court might have jurisdiction to issue a writ of prohibition to prohibit a future act by Respondent. Furthermore, we have not found such a proceeding. Thus, we have no pending jurisdiction to protect or preserve by way of a writ of prohibition. That being the case, we lack jurisdiction to issue a writ of prohibition. Accordingly, we deny Relator's request to issue a writ of prohibition.

### *This Court's Ruling*

Relator's petition for writ of mandamus is conditionally granted in part. The Honorable Carter T. Schildknecht is directed to vacate her order of October 2, 2014, to the extent that the order requires the State to conduct criminal history searches of the NCIC/TCIC databases. A writ of mandamus will issue only if Judge Schildknecht fails to act by November 25, 2014. Relator's request for a writ of prohibition is denied.


JOHN M. BAILEY
JUSTICE


November 10, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

11