

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

October 19, 2015

The Honorable Sharen Wilson
Tarrant County Criminal District Attorney
401 West Belknap
Fort Worth, Texas 76196

Opinion No. KP-0041

Re: Discoverability under *Brady v. Maryland* and the Michael Morton Act of recordings of inmate telephone calls to which the criminal district attorney's office has access without a warrant (RQ-0025-KP)

Dear Ms. Wilson:

You ask about the discoverability of recordings of inmate telephone calls under federal and state law.[1] You tell us that Tarrant County (the "County") has a contract with Securus Technologies, Inc. ("Securus") under which Securus provides telecommunication services to inmates in the county jail facilities. Request Letter at 1. You inform us that the criminal district attorney's office requested the contract require Securus to record telephone calls (except to legal counsel) made by inmates from the county jail. *Id.* The inmates are notified by signs in the jail facilities and by a recording when a call is made that their conversations are recorded. *See id.*

You tell us that Securus stores these recordings and is the custodian of all call records and recordings but that the criminal district attorney's investigators can access the recorded calls without a warrant through an application of Securus. *See id.* You tell us further that the investigators provide the recordings to law enforcement agencies upon request without a warrant. *See id.* The contract provides that the County "retain[s] custody and ownership of all recordings" and grants to Securus "a perpetual limited license to compile, store, and access recordings of inmate calls for enumerated purposes." *Id.* at 2. To comply with state and federal law you ask:

> (1) Does *Brady* require the Criminal District Attorney's Office to review recordings of jail-inmate telephone calls that are created and stored on servers owned by a private company as part of its contract with the county to provide telecommunication services and maintenance in order to determine whether such recordings contain exculpatory or impeachment evidence if the Criminal District Attorney's Office has not otherwise exercised its ability to access the recordings without a warrant?

---

[1]*See* Letter and Brief from Honorable Sharen Wilson, Tarrant Cnty. Crim. Dist. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (May 29, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

> (2) Under the Michael Morton Act, are recordings of jail-inmate telephone calls that are created by and stored on servers owned by a private company as part of its contract with the county to provide telecommunication services and maintenance considered to be in the possession, custody, or control of the State or a person under contract with the State if the Criminal District Attorney's Office does not exercise its ability to access the recordings?
>
> (3) For purposes of the Michael Morton Act, does the ability of the Criminal District Attorney's Office to access without a warrant recordings of jail-inmate telephone calls, which are created and stored by a private company under a contract with the county, equate to possession, custody, or control of the recordings by the State or a person under contract with the State?

*Id.* at 3.

In 1963, the United States Supreme Court held in *Brady v. Maryland*, 373 U.S. 83 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87; *see also United States v. Bagley*, 473 U.S. 667, 676 (1985) (determining that *Brady* includes exculpatory and impeachment evidence), *United States v. Agurs*, 427 U.S. 97, 110–11 (1976) (holding that the duty to disclose exculpatory evidence is not limited to cases in which the defense makes a request for the evidence). A *Brady* violation occurs where (1) the prosecution suppressed or withheld evidence, regardless of the prosecutor's good or bad faith; (2) the evidence would have been favorable to the accused; and (3) the evidence would have been material to the accused's defense or punishment, in that there is a "reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Your first question involves the issue of a prosecutor's knowledge of evidence under *Brady* and thus implicates the first element. *Brady* imposes a duty to disclose evidence favorable to the defendant, but it does not create a "general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Nor does *Brady* require a prosecutor to independently search for exculpatory evidence. *Bagley*, 473 U.S. at 675 & n.7. There is no constitutional requirement that a prosecutor must "make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois*, 408 U.S. 786, 795 (1972). "*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006); *see also Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir. 1975) (concluding, in part, that no due process violation occurred where evidence in dispute was both unavailable to the prosecution and beyond the power of the prosecution to obtain). And at least one Texas court of appeals has determined that requiring prosecutors to conduct searches on criminal history databases "exceeds the requirement of *Brady* because the State would

be required to independently seek out exculpatory evidence on behalf of the defendant." *In re State*, 448 S.W.3d 687, 692 (Tex. App.—Eastland 2014, orig. proceeding).

Yet, *Brady* does require prosecutors "to learn of *Brady* evidence known to others acting on the state's behalf in a particular case." *Harm*, 183 S.W.3d at 406; *see Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995) (determining that the duty to disclose encompasses evidence unknown to the prosecution but known to law-enforcement officials and others acting on the government's behalf). "Even if the prosecutor [is] not personally aware of the evidence, the State is not relieved of its duty to disclose because 'the State' includes, in addition to the prosecutor, other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case."[2] *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012). "A prosecutor may not create a wall of ignorance in order to protect himself from the obligations of *Brady*." *Johnston v. State*, 917 S.W.2d 135, 138 (Tex. App.—Fort Worth 1996, writ ref'd).

Under these principles, *Brady* and its progeny likely do not impose a general duty upon a prosecutor to listen to all recordings of inmate telephone calls to search for exculpatory evidence for a defendant if the prosecutor's office would not do so otherwise. *See In re State*, 448 S.W.3d at 693 (stating that "access to information does not equate to knowledge that the information exists"). But to the extent the investigators and other employees of a prosecutor's office listen to any recorded inmate telephone call, *Brady* does impose a duty upon the prosecutor to discover whether investigators and employees found evidence favorable to a defendant in the recordings and, if so, to disclose that evidence to the defendant. The fact that the recordings are held by a third party vendor pursuant to a contract with the County does not absolve a prosecutor of the duty to make him or herself aware of what investigators and law enforcement officials discover.

Unlike your first question, which asked about a duty under article 39.14, your second and third questions both ask about access: whether the ability of a criminal district attorney's office, even if unexercised, to access recordings of inmate calls without a warrant results in the recordings being subject to article 39.14 of the Code of Criminal Procedure.[3] *See* Request Letter at 3. Significantly amended in 2013 by the Michael Morton Act, article 39.14 governs the state's duties of disclosure of evidence in a criminal case. *See* SENATE COMM. ON CRIM. JUSTICE, BILL ANALYSIS, Tex. S.B. 1611, 83rd Leg., R.S. (2013). Subarticle 39.14(a) provides that

> as soon as practicable after receiving a timely request from the defendant[,] the state shall produce . . . any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law

---

[2]Courts have found a "prosecution team" consisted of cooperating state and federal agencies such that evidence known by the state team was "imputed to the federal team." *United States v. Antone*, 603 F.2d 566, 569–70 (5th Cir. 1979). Similarly, a prosecutor was imputed with the knowledge of witness statements in the custody of the county sheriff's office. *See Ex parte Mitchell*, 853 S.W.2d 1, 3–4 (Tex. Crim. App. 1993).

[3]Because under subarticle 39.14(a)'s plain language a duty is triggered by "a timely request from the defendant," the question whether a duty, if any, arises to disclose evidence will depend upon the specific request received from the defendant. TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2014).

> enforcement officers . . . not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (West Supp. 2014). Key to addressing your questions is the scope of the phrase "possession, custody, or control of the state."

Subarticle 39.14(a) requires a criminal district attorney's office, as a representative of the state, to produce the material, disclosable evidence that is in the criminal district attorney's "possession, custody, or control." *Id.*; *see also id.* art. 2.01 (West 2005) (providing that district attorneys represent the state in criminal matters); TEX. GOV'T CODE ANN. § 44.320(a) (West 2004) (providing the criminal district attorney in Tarrant County with all of the powers of district attorneys). Article 39.14 itself does not define "possession, custody, or control." *See generally* TEX. CODE CRIM. PROC. ANN. art. 39.14(a)–(n) (West Supp. 2014). Yet, in the analogous context of civil discovery, the Texas Supreme Court has said that the phrase "[p]ossession, custody or control of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (quoting Rule 192.7(b), Texas Rules of Civil Procedure). "The right to obtain possession is a legal right based upon the relationship between the party from whom a document is sought and the person who has actual possession of it." *GTE v. Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (construing predecessor to Rule 192.7, Texas Rules of Civil Procedure).

You do not tell us that your office has a legal right to access these recordings, only that you may do so without a warrant. *See* Request Letter at 1–2. Whether any given criminal district attorney's office has possession, custody, or control of the recordings of inmate telephone calls will depend on the relationship between the criminal district attorney's office and the entity making the recordings. Such a determination would likely require the construction of the contract that governs the recordings, and construction of a contract is beyond the scope of an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0725 (2009) at 1 ("This office does not construe particular contracts or contract provisions."). But a contract that provides unfettered access to inmate recordings could be considered by a court as evidence in support of the criminal district attorney's office having possession, custody, or control of inmate telephone call recordings.[4] As you ask only about access and not about your duty under article 39.14, we do not address whether it imposes any duty on your office under the circumstances you describe.

---

[4]The parties to such a contract could revise the contract to alter the procedure by which a prosecutor's office accesses the recordings and the corresponding amount of control given to a prosecutor's office.

## S U M M A R Y

*Brady v. Maryland* and its progeny do not impose a general duty upon a prosecutor to listen to all recordings of inmate telephone calls held by the county telecommunications provider to search for exculpatory evidence for a defendant if the prosecutor would not do so otherwise. To the extent the investigators and other employees of the prosecutor listen to any recorded inmate telephone call, *Brady* does impose upon the prosecutor a duty to discover whether the investigators and employees find evidence favorable to a defendant in the recordings and, if so, to disclose that evidence to the defendant.

Considering the Texas Supreme Court's definition of "possession, custody, or control" in an analogous context, a court construing the phrase in article 39.14 of the Code of Criminal Procedure would have a basis on which to determine that a contract providing a criminal district attorney's office with unfettered access to recordings of inmate telephone calls gives the criminal district attorney's office possession, custody, or control of the recordings.

Very truly yours,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee