

# NUMBER 13-23-00059-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

AMADO MARTINEZ JR.
A/K/A AMADO MARTINEZ,                                    Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 357TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Justice Longoria**

Appellant Amado Martinez Jr. a/k/a Amado Martinez was found guilty by a jury for committing the offense of aggravated assault with a deadly weapon, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(b)(1). The jury assessed punishment at twenty-five years' imprisonment. By three issues, Martinez argues (1) the trial court erred when it

denied his motion for change of venue, (2) the trial court erred when it denied his request for production of impeachment evidence, and (3) the trial court dismissed the count under which he was convicted at trial. We affirm.

## I. BACKGROUND

Martinez was indicted by a grand jury for committing aggravated assault with a deadly weapon, Count I; burglary of a habitation, Count II; and attempted murder, Count III. Veronica Rivas, Martinez's former girlfriend, was the complainant for all three charges.[1]

Trial was set to commence on Monday, January 9, 2023. Prior to trial, on January 3, 2023, Martinez filed a request for discovery pursuant to Article 39.14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. On Friday, January 6, 2023, Martinez filed an amended discovery request, specifically seeking:

> Any evidence as to the legal residence status of Veronica Rivas in the United States, including all United States Citizenship and Immigration Services (USCIS) Immigration filings, applications, and receipts pertaining to the legal status of Veronica Rivas filed by her or on her behalf, which the State may have.

On the same day, Martinez filed a motion for change of venue at approximately 4:34 p.m. In his motion, Martinez argued that the publicity generated about his case had been so widespread, inflammatory, adverse, and prejudicial as to raise a substantial doubt that he could obtain a fair trial in Cameron County. Attached to Martinez's motion were the affidavits of Cinthia Isabel Mercado and Cecilia Rodriguez, residents of

---

[1] Because the underlying facts of the offense of conviction are not relevant to our analysis of the issues, we omit them from our discussion. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Cameron County. The affidavits were nearly identical. Both affiants attested the following:

> I am aware of the contents of [Martinez's] motion for change of venue in this case. I state under oath that [Martinez] cannot obtain a fair and impartial trial in Cameron County, Texas because of the widespread, inflammatory[,] and prejudicial publicity generated about this case in Cameron County, Texas. Nor can [Martinez] expect a fair trial because there is a dangerous combination against him instigated by influential persons.

Martinez also attached his own affidavit, stating that "I have read the foregoing Motion for Change of Venue and swear that all the allegations of fact contained therein are true and correct."

On January 9, 2023, the trial court called the case and asked defense counsel whether he had filed a motion to suppress. Defense counsel confirmed he had and requested that the trial court first address the motion for change of venue. The trial court indicated it was going to hold a hearing on the motion, and defense counsel informed the trial court that the witnesses he intended to call on the motion were on their way. The prosecutor then explained to the trial court that he only became aware of Martinez's venue-change motion the day before and had not had time to find affiants to counter the statements made in the affidavits attached to Martinez's motion. The following exchange occurred:

| | |
|---|---|
| [The State]: | I've not had time to subpoena his affiants to make sure they are here to be questioned. I mean, again, last minute, eleventh hour, I struggle with this. I don't want to deny the defendant his— |
| [The Court]: | You struggle with it. I struggle with it. I understand. |
| [The State]: | I want to be clear: I don't want to deny the defendant his rights, but this kind of delay tactic is very frustrating for me. This has gone on so |

3

| | |
|---|---|
| | long and we need to get it tried. |
| [The Court]: | It has . . . . This case has been pending for a while. |
| [Defense Counsel]: | It's not a delay tactic, Judge. I'm still receiving discovery from them. They are so hypocritical. They have not provided discovery. I've been all week to— |
| [The Court]: | What have you not provided him? |
| [The State]: | We've provided everything we have, Judge. |
| [The Court]: | Okay. What is it that you're lacking? |
| [Defense Counsel]: | According to him he's provided everything, but there's— |
| [The Court]: | Right. |
| [Defense Counsel]: | Friday I'm still asking for a witness list. He just sent me a text yesterday about it. There's other discovery that I asked him about. I've asked him about [Rivas] and her criminal history, her citizenship. It's several items that I'm requesting. |
| [The Court]: | Well, the citizenship is whatever they know. They're not required to go and dig out any information about that. Under [the Michael Morton Act] and under *Brady* their requirement is if they have information in their file, they must produce it to you. |
| [Defense Counsel]: | Well, they're required— |
| [The Court]: | That's one. And, Number 2, I find her citizenship, the victim's citizenship, highly irrelevant unless you can make a solid, good-faith argument as to why that should even matter. |
| [Defense Counsel]: | I can, Your Honor. |

4

| | |
|---|---|
| [The Court]: | All right. And I'll listen to you then. So if they don't know what it is, they don't have anything in the file that indicates her citizen[ship], they're swimming in the same lake you are. They don't know and to them it doesn't matter and it shouldn't matter to you either. Apparently, it matters to you for a specific reason, which I'll hear you out, but as far as I sit here right now, off the top my head, it's irrelevant what her citizenship is. She's the victim of a crime in the United States. She's entitled to a fair trial just like your client is. So have you given him any information that you possess in your file that reflects any status of the victim in the country? |
| [The State]: | The only information we've received is an oral statement by the victim about her status. I have relayed that to him multiple times. |
| [The Court]: | Well, that's all you're required to do. You don't have it in your file and you didn't search for it and you're not required to do that. |
| [The State]: | Correct. |
| [The Court]: | If you have it in your file and you use it for prosecution, you must turn it over to them. |
| [Defense Counsel]: | Judge, I have not received anything. What did you relay to me about her citizen[ship]? |
| [The Court]: | The only thing that she said is what she's telling them. |
| [Defense Counsel]: | He hasn't told me. I don't know what he's talking about. |
| [The Court]: | Well, right now he just told me that. That's the only information he has— |
| [The State]: | Yes, sir. |
| [The Court]: | —what she knows. |
| [The State]: | May I? |

5

| | |
|---|---|
| [The Court]: | Yes. |
| [Defense Counsel]: | Could you put it on the record. |
| [The State]: | She's told us she's a resident. |
| [Defense Counsel]: | Okay. That's all I need to know. |
| [The Court]: | All right. We'll take up your [m]otion [for change of] venue shortly. |

The State then requested a one-week reset in order to submit a response to Martinez's venue-change motion and to obtain witnesses. The trial court addressed defense counsel, stating: "Do not be filing things at the last minute. That's unfair to everybody, to us, to opposing counsel. It's just unfair . . . ." Defense counsel responded that he was not trying to delay the trial, but that some of the material he was planning to present had "just came out this week and I just saw it late this week," and then indicated he had no objections to the State's continuance request. After the trial court and the parties discussed the requirements for a change of venue based on the Texas Code of Criminal Procedure, the trial court informed the parties that it was going to proceed with a hearing on Martinez's venue-change motion. Martinez did not raise any objection to the hearing. However, the State objected to the trial court's ruling to proceed on Martinez's motion that day, and the trial court "noted" the State's objection.

At the hearing, Martinez presented the testimony of Rodriguez, who testified in relevant part that she was a friend of Martinez, that "everybody on social media"—including an internet blog called "El Runn Runn" and three other news publication pages—was negatively "bashing" him, and that he could not get a fair trial because of social media and publicity. During her testimony, a printout of the "El Runn Runn" blog

6

post about the case was admitted into evidence. The post included a photograph depicting Rivas in a hospital bed with injuries to her face. The printout also included eighteen "comments" associated with the post, which Rodriguez alleged were prejudicial towards Martinez.

After Rodriguez testified, defense counsel informed the trial court that his next witness had had a flat tire and was going to be dropped off at the courthouse. Defense counsel then attempted to call Rivas as a witness but the trial court denied that request. The trial court then asked if Martinez's "suppressions" were on "all three cases." The State responded, "Just on this one, Judge." The trial court asked "What is this one?" and the State responded "[t]he aggravated assault case," and "[w]e're only going to go on that count." The trial court then suspended the hearing on Martinez's motion for change of venue and proceeded to conduct a hearing on his motion to suppress.

Once the trial court resumed the hearing on his motion for change of venue, Martinez presented the testimony of Ana Laura Alvarado, Martinez's sister and a long-time resident of Cameron County. Alvarado testified, among other things, that social media attention had affected this case "[a] lot because . . . the way the community has been judging [Martinez] and the way they created him as a monster." She said "[t]hey set their own perception of what they wanted for him, not giving him a fair trial" and that this had been occurring since "maybe about . . . two weeks after the incident." Alvarado indicated that the social media and publicity was prejudicial towards Martinez and that it was not possible for him to get a fair and impartial trial in Cameron County.

The State cross-examined both witnesses regarding their veracity and personal knowledge as related to their statements about social media and publicity surrounding

7

the case as well as their conclusion that Martinez could not get a fair trial. The State did not present its own witnesses. The trial court denied Martinez's motion for change of venue and the case proceeded to jury selection and trial.

After both parties presented evidence and closing statements, the jury found Martinez guilty of aggravated assault with a deadly weapon. This appeal ensued.

## II. CHANGE OF VENUE

In his first issue, Martinez argues that the trial court erred when it denied his motion for change of venue.

### A. Standard of Review & Applicable Law

We review a trial court's decision to deny a venue-change request for an abuse of discretion. *Freeman v. State*, 340 S.W.3d 717, 724 (Tex. Crim. App. 2011); *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007). If the trial court's decision is within the zone of reasonable disagreement, we will affirm it. *See Freeman*, 340 S.W.3d at 724; *Gonzalez*, 222 S.W.3d at 449.

The United States and Texas Constitutions guarantee a criminal defendant a fair trial by an impartial jury. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. "[W]hen a defendant demonstrates his inability to obtain an impartial jury or a fair trial at the place of venue," a venue change is proper and consistent with due-process principles. *Hathorn v. State*, 848 S.W.2d 101, 109 (Tex. Crim. App. 1992).

Article 31.03(a) of the Texas Code of Criminal Procedure provides that a trial court may grant a change of venue if the defendant establishes that "there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial" or "there is a dangerous combination against him instigated

8

by influential persons, by reason of which he cannot expect a fair trial." TEX. CODE CRIM. PROC. ANN. art. 31.03(a). A defendant seeking a venue change must file a written motion supported by his own affidavit and the affidavits of at least two credible county residents asserting that the defendant cannot receive a fair trial in that county due to either prejudice or a combination of influential persons against him. *See id*. "If the defendant's motion is proper on its face, he is entitled to a change of venue as a matter of law, unless the State properly challenges the defendant's motion." *Janecka v. State*, 937 S.W.2d 456, 467 (Tex. Crim. App. 1996).

The State may challenge the defendant's motion by attacking the defendant's affiants' credibility or their "means of knowledge" through an "affidavit of a credible person." TEX. CODE CRIM. PROC. ANN. art. 31.04. "The purpose of [an Article 31.04] controverting affidavit is to provide a form of pleading [that] establishes that there is a factual dispute in need of resolution." *Burks v. State*, 876 S.W.2d 877, 890 (Tex. Crim. App. 1994). Although the article does not specify that the State must file controverting affidavits, "a hundred years of precedents" have held that until this is done, there is no issue between the parties to argue at a hearing. *Lundstrom v. State*, 742 S.W.2d 279, 283 (Tex. Crim. App. 1986). If the State files no controverting affidavits, the defendant is entitled to a change of venue as a matter of law. *Id.* However, this entitlement can be waived.

> When a defendant files a sufficient motion for change of venue and the State fails to file controverting affidavits, a defendant is entitled to a change of venue as a matter of law. *McGee v. State*, 774 S.W.2d 229[, 241] ([Tex. Crim. App. 1989]) []; [] *McManus v. State*, 591 S.W.2d 505, []516 ([Tex. Crim. App. 1979]). However, if a defendant does not avail himself of the opportunity to demand his change of venue as a matter of law, and instead, proceeds to the hearing on his motion "without objecting there was no issue

9

of fact to be tried because the State failed to controvert the affidavits supporting his motion," the defendant will have waived his "per se right to a change of venue." *McGee*, [774 S.W.2d] at 241. In *McManus*, the defendant not only failed to object to the hearing on the grounds that he was entitled to a change of venue as a matter of law, he also "persisted in his request for a hearing on the motion." *McManus*, [591 S.W.2d] at 517. When the defendants in *McGee* and *McManus* went forward at their hearing to prove they were entitled to a change of venue as a matter of fact, they conceded they were not entitled to a change of venue as a matter of law.

*Foster v. State*, 779 S.W.2d 845, 855 (Tex. Crim. App. 1989) (cleaned up).

## B.     Discussion

In his first issue, Martinez argues that he "properly filed affidavits supporting the [venue-]change and the prosecution failed to file controverting affidavits" and that "there was no waiver by [Martinez] of a controverting affidavit." Martinez concludes that he was entitled to a change of venue as a matter of law and "it became mandatory for the trial court to grant the motion to change venue and [its] failure to do so requires reversal." Martinez asserts no other argument regarding his complaint of the trial court's denial of his motion for venue-change.

We agree that the State failed to file any controverting affidavits in response to Martinez's motion for change of venue. However, Martinez did not demand a change of venue as a matter of law nor object that there was "no issue of fact to be tried because the State failed to controvert the affidavits supporting his motion." *Id.* Instead, Martinez proceeded to the hearing on his motion. *Id.*; *McManus*, 591 S.W.2d at 516 ("Where the defendant, without [objecting that there is no fact to be tried], allows the trial court to hear the merits of the issue and to thus exercise its discretion in determining the issue of fact, he cannot thereafter argue that no issue of fact was raised and that he was entitled to the change[ of venue] as a matter of law."). Consequently, Martinez waived his "per se right

10

to a change of venue" and it was not mandatory for the trial court to grant his motion for change of venue. *Foster*, 779 S.W.2d at 855. Martinez's first issue is overruled.

## III. DISCOVERY VIOLATION

In his second issue, Martinez argues that "[l]aw enforcement was required to produce all matters being requested related to immigration status and the prosecution was required to then produce this for the defense." Martinez further argues that the trial court "misstated and misapplied the requirements of [*Brady*] and [Texas Code of Criminal Procedure Article 39.14] by failing to require production of impeachment information against the complaining witness related to the Violence Against Women Act [VAWA]." *See* 8 U.S.C. § 1229b(b)(2)(A) (providing the Attorney General with discretion to cancel the removal and adjust the status of an alien who is inadmissible or deportable from the United States if the alien demonstrates certain conditions); *see also Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1144 (9th Cir. 2005) ("[I]n [VAWA], . . . Congress . . . created new exceptions in the visa and suspension of deportation contexts for victims of spousal abuse—exceptions that freed victims from relying on battering spouses when seeking relief."); *Ruiz v. U.S. Att'y Gen.*, 73 F.4th 852, 854 (11th Cir. 2023) ("Congress enacted what is now § 1229b(b)(2) as part of [VAWA] to enable certain victims of domestic abuse to obtain discretionary deportation relief.").

### A. Standard of Review & Applicable Law

A trial court's ruling on pretrial discovery is reviewed for an abuse of discretion. *Branum v. State*, 535 S.W.3d 217, 224 (Tex. App.—Fort Worth 2017, no pet.).

The State has a constitutional obligation to disclose evidence favorable to the defendant whether or not the defendant requests it. *Brady v. Washington*, 373 U.S. 83,

11

87–89 (1963); *United States v. Bagley*, 473 U.S. 667, 682 (1985). This includes evidence that may be used to impeach a witness's credibility. *Bagley*, 473 U.S. at 676.

In addition, Texas Code of Criminal Procedure Article 39.14, also known as the Michael Morton Act, governs discovery in criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14. "[I]t addresses 'what the State must produce and when the State must produce it.'" *In re State ex rel. Skurka*, 512 S.W.3d 444, 453 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). The statute provides, in relevant part:

(a)   [A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

.  .  .  .

(h)   Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

.  .  .  .

(k)   If at any time before, during, or after trial the state discovers any additional document, item, or information required to be disclosed under Subsection (h), the state shall promptly disclose the existence of the document, item, or information to the defendant or the court.

TEX. CODE. CRIM. PROC. ANN. art. 39.14(a), (h), (k).

12

**B.	Discussion**

In his brief, Martinez does not raise a complaint relating to the timeliness of the State's disclosure of Rivas's oral statement that she was a resident. Instead, Martinez argues that the trial court erred "in ruling that the prosecution must only produce discovery 'if they have information in their file'" because said ruling was "clearly contrary to the duties of the prosecution both under [*Brady*] and the Michael Morton Act." Thus, we construe Martinez's argument as a challenge to the State's failure to disclose and produce additional evidence relating to "the legal residence status of []Rivas in the United States" in violation of *Brady* and Article 39.14.

The *Brady* requirements only apply to information "known" to the State. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995); *Hafdahl v. State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990) ("*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist."). The State is not required under *Brady* to seek out exculpatory evidence independently on the defendant's behalf. *Bagley*, 473 U.S. at 675; *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). Similarly, no provision of Article 39.14 imposes an affirmative duty on the State to seek out and disclose information that is outside the State's possession or create evidence that does not exist. *In re State ex rel. Best*, 616 S.W.3d 594, 600 (Tex. Crim. App. 2021) (orig. proceeding) ("But whatever may be the permissible scope of a trial court's discretion over matters of pre-trial discovery, it does not extend to the point of ordering the State to create or generate evidence that does not otherwise exist. This Court has plainly said that a trial court does not have the authority to do that."); *In re State*, 659 S.W.3d 1, 14 (Tex. App.—El Paso 2020, no pet.)

13

(noting that disclosure requirements of Article 39.14 are limited to pre-existing documents and items already in the State's possession; trial court cannot order the State to create documents that are not already in its possession, custody, or control, even after passage of Michael Morton Act); *Coleman v. State*, 577 S.W.3d 623, 634 (Tex. App.—Fort Worth 2019, no pet.) ("Article 39.14 does not, however, give the trial court the authority to order the State to create a document that is not already in its possession, custody, or control.") (citing *In re State ex rel. Munk*, 448 S.W.3d 687, 692 (Tex. App.—Eastland 2014, orig. proceeding)).

Here, the State was not required to seek out additional evidence it did not possess regarding Rivas's legal residence status on Martinez's behalf pursuant to *Brady* or Article 39.14 and there is no evidence in the record demonstrating that such evidence was in the State's possession but withheld. *Bagley*, 473 U.S. at 675; *In re State ex rel. Best*, 616 S.W.3d at 60; *see also Mitchell v. State*, No. 01-23-00251-CR, 2024 WL 187385, at *7 (Tex. App.—Houston [1st Dist.] Jan. 18, 2024, no pet.) (mem. op., not designated for publication) ("The defendant has the burden to show the complained-of evidence was in the State's possession but withheld."). Accordingly, the trial court did not err in impliedly ruling that the State had not committed a discovery violation under *Brady* or Article 39.14. *See Branun*, 535 S.W.3d at 224. Martinez's second issue is overruled.[2]

_____

[2] In connection to this issue, the State asserts that "[Martinez]'s real issue, which he failed to identify in his brief, is the exclusion of evidence, namely a challenge to the trial court's ruling limiting his cross-examination regarding complainant's immigration status." At trial, defense counsel asked Rivas during cross-examination whether she was a U.S. citizen and whether she had applied for "any kind of citizenship under the [VAWA]." The State lodged relevance objections to both questions and the trial court sustained both objections. In his brief, while discussing his discovery violation complaint, Martinez argued that "[t]he jury should have been able to weigh the credibility of [Rivas's] testimony in light of the incentives she had to lie under [the VAWA]." To the extent this statement can be construed as a challenge to the trial court's limitation of his cross-examination of Rivas, we hold that Martinez has waived this complaint due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for

## IV.    DISMISSAL

In his third issue, Martinez argues that the trial court dismissed the sole count for which he was convicted at trial, and urges this Court, among other things, to reverse the trial court's judgment and render acquittal.

The clerk's record contains a combined "State's Motion to Dismiss Count(s) 2 & 3 of the Indictment" and proposed "Order Dismissing Count(s) 2 & 3 of the Indictment." The motion indicates the State sought to dismiss Counts II and III of the indictment and intended to proceed on Count I. The proposed order, which the trial court signed, states that the trial court considered the State's motion "asking for permission of the Court to dismiss Count(s) 2 & 3 against [Martinez]" on January 9, 2023, and stated that "the Court is of the opinion that the reason(s) so stated is/are good and sufficient to authorize dismissal." The order further stated, "IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the Court, that the State's Motion to Dismiss Count(s) I of the Indictment heretofore filed herein be and the same is hereby GRANTED" and contained a hand-written signature of the trial judge. Notably, the roman numeral "I" of the quoted

---

the contentions made, with appropriate citations to authorities and to the record.").

Within his discussion of the alleged discovery violation in his brief, Martinez also argues that the State failed to comply with Article 2.1397 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 2.1397 (requiring law enforcement agencies to submit written statements to the attorney representing the State acknowledging that everything in possession of the agency that must be disclosed under Article 39.14 has been disclosed to the attorney representing the State). In order for an issue to be preserved for appeal, there must be a timely objection that specifically identifies the legal basis for the objection. *See* TEX. R. APP. P. 33.1(a). Because Martinez did not raise any complaint to the trial court regarding the State's noncompliance with Article 2.1397, he has failed to preserve this complaint on appeal. *See* TEX. R. APP. P. 33.1(a). Even if Martinez preserved his Article 2.1397 complaint, we have previously concluded that the plain text of the statute is silent on its face as to the consequences of noncompliance and found no indication that a new trial would be an appropriate remedy for noncompliance. *See State v. Villarreal*, 692 S.W.3d 844, 852 (Tex. App.—Corpus Christi–Edinburg 2024, pet. filed) (citing *Black v. State*, No. 13-22-00147-CR, 2023 WL 7204472, at *7–8 (Tex. App.—Corpus Christi–Edinburg Nov. 2, 2023, pet. ref'd) (mem. op., not designated for publication)).

15

language in the order was also hand-written. The reporter's record indicates that neither the trial court nor the parties addressed the motion or order on the record. In addition, nothing in the order itself or the Clerk's Record indicates exactly what time the order was signed. It was not until Martinez filed his appellate brief that he raised an issue concerning this order, and the State suggests in response that the order contains a clerical error.

As shown above, the trial court was made aware on the record that the State was proceeding only on Count I of the indictment during the hearings conducted prior to jury selection on January 9, 2023. However, neither the trial court nor the parties expressly addressed the State's motion to dismiss or the trial court's order granting dismissal on the record. Furthermore, the State's motion specifically requested dismissal of Counts II and III, and trial commenced solely on Count I, the aggravated assault with a deadly weapon charge, which resulted in a conviction by the jury. Because the record contained some indication that the trial court's order dismissing Count I was the result of clerical error, we issued an order on October 16, 2024 abating the appeal and directing the trial court to conduct a hearing to determine whether its order purporting to dismiss Count I was a clerical error.

After a hearing conducted on November 2, 2024, the trial court signed and entered its "Findings and Orders Pursuant to Order of Abatement" on November 13, 2024. The trial court found that "the State proceeded to trial only on aggravated assault with a deadly weapon charge (Count 1), as evidenced by the record." The trial court further found that the order dismissing Count I contained a clerical error in its second paragraph that rendered it "inconsistent with the combined filing in its entirety" by which the State moved for dismissal of Counts 2 and 3. The trial court concluded that it "intended to order the

16

dismissal of Count[s] 2 & 3 rather than Count 1." The trial court also concluded that a nunc pro tunc order was necessary to correct the clerical error.

On the same day, the trial court signed and entered a "Nunc Pro Tunc Order Dismissing Count(s) 2 & 3 of the Indictment." Notably, the order states, "IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the Court, that the State's Motion to Dismiss Count(s) 2 & 3 of the Indictment heretofore filed herein be and the same is hereby GRANTED." Because the record shows the January 9, 2023 order dismissing Count I was erroneously entered and the circumstances making the error show clerical and not judicial error, the trial court had the power to correct its order to show that Counts II and II were dismissed and that Count I was not dismissed. *See Smith v. State,* 801 S.W.2d 629, 633 (Tex. App.—Dallas 1991, no pet.); *Printers v. State*, No. 05-03-01426-CR, 2005 WL 183057, *1 (Tex. App.—Dallas 2005, no pet.) (not designated for publication). Consequently, we overrule Martinez's third issue.

## V.    CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
12th day of December, 2024.

17