Opinion by Justice Pittman *628 INTRODUCTION
Appellant Glenn Coleman appeals his conviction and 99-year sentence for possession of a controlled substance, methamphetamine. In four issues, Coleman argues that: (1) the State violated the Michael Morton Act, his due process rights, and his rights under Brady v. Maryland , 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), by failing to learn the identity of the informant whose tip led police to arrest him and by not disclosing the informant's criminal history; (2) the trial court erred by denying his motion for disclosure of the informant's identity; (3) the trial court abused its discretion by not allowing him to "timely" use a prior statement of the arresting officer for impeachment purposes; and (4) the trial court abused its discretion by overruling his objection to the prosecutor's jury argument during the punishment phase of trial. After review, for the reasons set forth herein, we affirm Coleman's conviction, but we reverse and remand for a new trial on punishment.
BACKGROUND
I. Coleman's Efforts to Learn About the Informant Pre-Trial
A grand jury indicted Coleman for possession of methamphetamine in an amount of four or more grams but less than 200 grams, a second-degree felony. See Tex. Health & Safety Code Ann. §§ 481.102(6), .115(a), (d). The indictment included two enhancement paragraphs that if found true would elevate the statutory range of confinement from two to twenty years to a range of twenty-five years to 99 years or life. Tex. Penal Code Ann. §§ 12.33, 12.42(b).
Before the trial, Coleman learned that what led the arresting officer to Coleman on the day of his arrest was a tip from an informant. As a result, Coleman filed two pretrial motions in an attempt to learn the identity of the informant. First, Coleman filed a request for discovery pursuant to Texas Code of Criminal Procedure Article 39.14. See Tex. Code Crim. Proc. Ann. art. 39.14. Second, Coleman filed a motion seeking the disclosure of the identity of the informant. After conducting a hearing regarding Coleman's disclosure motion, the trial court held an in camera hearing with the arresting officer to determine whether the State should be required to disclose the informant's identity. After the in camera hearing, the trial court sent a letter to the parties in which it ruled that the State was not required to disclose the identity of the informant. In the letter, the trial court expressed that because the informant was not at the scene when the arresting officer apprehended Coleman and discovered the methamphetamine, the informant could not provide any information or testimony that would go to the determination of whether Coleman possessed the methamphetamine. The trial *629 court also stated in the letter that "[a]t the time the [tip] was provided[,] the informant did not have any criminal charges pending[,] to the [arresting officer's] knowledge, but [the informant] has from time to time had criminal cases."
After receiving this letter ruling, Coleman filed a third discovery motion asking for production of any materials "pertaining to the Confidential Informant that was utilized, relied on[,] or referenced to in this cause." Coleman claimed that he was entitled to this information under Brady , 373 U.S. at 87, 83 S. Ct. at 1196-97. The trial court denied Coleman's third motion before trial.
II. Trial Proceedings
A. Detective Fitzgerald Testifies.
At trial, Detective Craig Fitzgerald with the City of Denton Police Department testified that on March 24, 2015, he received a phone call from an informant who told him that Coleman was in possession of methamphetamine. Fitzgerald said he was familiar with Coleman because he had both received information about him and made personal contact with him in the past. Regarding the informant's tip, Fitzgerald stated that the informant told him where Coleman was and that he was riding a bicycle and was in possession of methamphetamine. According to Detective Fitzgerald, based on this information, he proceeded in his unmarked police cruiser to Saint Andrews Church in Denton, which he knew served meals to the homeless. Fitzgerald testified that when he arrived, he saw Coleman getting off his bicycle. By Fitzgerald's account, Coleman began to walk away, but Fitzgerald caught up to him and asked him what he was doing. Fitzgerald said that Coleman appeared nervous and fidgety.
Detective Fitzgerald testified that he told Coleman he had received a tip that Coleman was carrying methamphetamine. Coleman denied this claim but, according to Fitzgerald, began to sweat, became even more nervous, and shifted from side to side. Fitzgerald said that he asked Coleman if he would empty his pockets, and Coleman did so, emptying his pockets onto the hood of Fitzgerald's cruiser. Among the items that Coleman allegedly placed on the hood was a SunMaid raisin box. Fitzgerald stated that he then opened Coleman's raisin box and saw what he believed to be "a lot" of methamphetamine. At that point, Fitzgerald's partner[2] arrived, and they arrested Coleman. Both initial field testing and later laboratory testing confirmed the substance to be almost twenty-one grams of methamphetamine.
During cross-examination, defense counsel asked Detective Fitzgerald about the informant. Fitzgerald averred that he knew the informant for more than twenty years and found the informant credible. When asked whether "[d]uring that period of time" the informant had a "criminal history," Fitzgerald stated that he did not recall. Defense counsel then asked Fitzgerald whether he was saying that he did not know if "this person ha[d] any criminal history?" Fitzgerald answered, "I don't know if they've been arrested. I know recently they've been arrested, but I don't know if they've been arrested prior to that." Detective Fitzgerald then stated that he believed the informant's recent arrest involved narcotics. Fitzgerald said that the informant was a person who was not paid for information and was not "working off [a] case[ ]." He also said that he did not ask the informant how the *630 informant knew that Coleman possessed methamphetamine.
B. Coleman Testifies.
After being fully admonished by his attorney and the trial court about the consequences of testifying in his own defense, Coleman testified. Coleman said he had lived in Denton since roughly 1984 and was currently homeless and living in a tent. Coleman testified that on March 24, 2015, he had ridden his bike to Saint Andrews Church to get a hot meal. By Coleman's account, just after he got off his bike, Fitzgerald approached him and told him he had a warrant for his arrest, he was under arrest, and he needed to empty his pockets. According to Coleman, he emptied his pockets onto the hood of Fitzgerald's cruiser. Coleman said the items in his pockets included cash, lottery tickets, a lighter, and cigarettes. He denied having a raisin box in his pocket and stated he did not know where it came from: "I didn't see any raisin box until [Fitzgerald] had gotten between me and the car. And the next thing I know there's a raisin box-he's walking around with a bag, and I'm like-I don't know what is going on." Coleman testified that (1) when Fitzgerald showed him the baggie of what appeared to be methamphetamine inside the raisin box, he explained to Fitzgerald that he no longer did drugs; and (2) he would not have had the money to purchase that amount of methamphetamine.
On cross-examination, Coleman would not say that Fitzgerald "planted" the methamphetamine on him, but he persistently said he did not know where it came from. Coleman stated he no longer used methamphetamine and that when he used it in the past, it was for recreational purposes on the weekends and the most he might have used at a given time was half a gram. He also testified that Fitzgerald had lied to the jury when he said (1) the raisin box came from Coleman's pockets and (2) another officer in a marked police cruiser transported Coleman to jail. Coleman stated Fitzgerald had driven him to the police station. Finally, Coleman testified he had a lengthy criminal history, had been incarcerated multiple times, and had been charged with possession before.
C. Detective Fitzgerald Testifies Again.
After Coleman testified, defense counsel asked to question Detective Fitzgerald outside the presence of the jury. During the questioning, Fitzgerald stated that his previous testimony in front of the jury regarding whether the informant in this case had a criminal history may have been confusing and the informant did have a criminal case "pending right now." Fitzgerald also said that in the pretrial in camera hearing, he told the trial judge that he had written a letter on the informant's behalf concerning his or her pending case.
The next day, the trial court gave the parties redacted copies of the transcript from the in camera hearing. The trial court also ruled that it would allow defense counsel to recall Fitzgerald to ask him about the possible conflict between his testimony during a prior hearing that the informant did have criminal charges pending and his initial testimony in front of the jury that he was unaware whether the informant had any criminal charges pending. The trial court instructed the parties to not refer to the hearing as an in camera hearing; rather, the parties were to refer to it as "a prior hearing."
Later, in the presence of the jury, defense counsel called Detective Fitzgerald back to the stand. Fitzgerald said that while he had not intentionally misled the jury about the informant's criminal history, he incorrectly testified that he was *631 unaware of whether the informant had any criminal charges pending and he had in fact testified in a prior hearing that he had written a letter on the informant's behalf regarding a matter in which the informant had been implicated. Fitzgerald averred, however, that the letter he wrote was written about a year after he arrested Coleman and he was unaware whether the informant had been convicted of anything when he received the informant's tip on March 24, 2015, that Coleman possessed methamphetamine.
D. Coleman is Convicted and Sentenced.
The jury returned a verdict of guilty, and the trial proceeded to the punishment phase the next day. Before testimony on punishment began, defense counsel stated on the record that she had conferred with Coleman "and he would not have testified ... had [they] known about that ... concrete prior inconsistent statement [by Detective Fitzgerald] as well as the additional information that came out."
As the punishment phase began, Coleman pled true to the enhancement paragraphs and formally stipulated to the truth of the State's evidence regarding the two felony offenses alleged therein. He also stipulated on the record to the admissibility of the State's exhibits regarding his criminal history. Coleman's criminal history included convictions for forgery, possession of a controlled substance, possession with the intent to distribute a controlled substance, driving under a suspended license, credit card abuse, theft, and failure to identify as a fugitive. The punishment record shows that Coleman had been incarcerated on at least two prior occasions and that the maximum time he had previously spent incarcerated was three years.[3]
As the State was giving its closing arguments, the following exchange occurred:
[Prosecutor]: Now, in our regular everyday lives, lies are bad. We shouldn't lie. We should tell the truth. Think about the consequences of your normal everyday life. When we're talking about lies, little white lies, those kind of lies that children tell, what are the consequences? Very minimal. In a court of law, lies have consequences.
I don't think I'm exaggerating to tell you that a court of law, a place where the truth is sacrosanct, is a bedrock principle of our government, our civilization, how we conduct our lives. We live in a world where truth is in flux. Saw a headline the other day asking if truth in the public sphere even exists anymore.
But in a court of law, when you put your hand up and promise that judge and the jury that you're going to tell the truth, what happens when you tell a lie. In the State of Texas, it's a third-degree felony. The State could, if we wanted to, and we won't, charge [Coleman] with another third-degree felony.
[Defense Counsel]: Your Honor, I'm going to object to this line of statements regarding lies and-
THE COURT: That's an improper objection, overruled.
[Defense Counsel]: I'll object to his misstatement of facts in this case and improper close and ask that the jury be ordered-or instructed to disregard.
THE COURT: The objection is overruled.
[Prosecutor]: A third-degree felony for this [Coleman], as you know now, is a sentence of twenty-five to ninety-nine *632 or life. When he lied to you, he attacked a bedrock principle of our State Constitution, our United States Constitution, how we live as Americans. He exposed himself to another felony offense-
[Defense Counsel]: Your Honor, I'm going to object again to this-any reference to him lying or perjuring himself has not been proven. [Coleman] has not-
THE COURT: Please make a proper legal objection.
[Defense Counsel]: Judge, it's not-it's a misstatement of facts. It's not before this jury. It has not-
THE COURT: Your objection is overruled.
After closing arguments, the jury retired to the jury room to deliberate. The jury returned a sentence of 99 years. The trial court rendered judgment accordingly, and this appeal followed.
DISCUSSION
I. Brady and Disclosure of Confidential Informant Information
In part of his first issue, Coleman argues that the State violated his due process rights under the Fourteenth Amendment to the United States Constitution by failing to learn the identity of the informant and by not disclosing it to him prior to trial and thus the State failed to conform with the edicts of Brady and California v. Trombetta , 467 U.S. 479, 485, 104 S. Ct. 2528, 2532, 81 L.Ed.2d 413 (1984), both Supreme Court cases requiring the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment.
In this part of his first issue, Coleman contends that his rights under Brady (and thus Trombetta ) were violated because "Fitzgerald never disclosed the identity of the confidential informant and did not timely disclose what he knew about the confidential informant's criminal history."
During oral argument before this court, Coleman stated that this is a case of first impression in Texas. To this court's knowledge, Coleman is correct.[4] The question before this court is when must the State's privilege not to disclose an informant's identity bend to the defendant's right to put on his defense? See United States v. Davis , 443 Fed.Appx. 9, 13 (5th Cir. 2011) ; see also McGhee v. State , 337 Ga. App. 150, 151, 786 S.E.2d 527 (2016).
Federal and state courts that have addressed this issue have developed a set of *633 factors that weigh the mandates of Brady against the State's privilege not to disclose an informant's identity under Roviaro . See Davis , 443 Fed.Appx. at 13 ; McGhee , 337 Ga. App. at 151, 786 S.E.2d 527.
For example, in weighing the government's interest in confidentiality against the defendant's interest in disclosure, the Fifth Circuit has established a three-pronged test to determine when disclosure is mandated under Brady . United States v. Cooper , 949 F.2d 737, 749 (5th Cir. 1991). Under this test, the Fifth Circuit examines: (1) the level of the informant's participation in the alleged criminal activity; (2) the helpfulness of disclosure to any asserted defense; and (3) the government's interest in nondisclosure (the " Roviaro factors"). See Roviaro , 353 U.S. at 62-65, 77 S. Ct. at 628-30 ; see also United States v. Diaz , 655 F.2d 580, 587-89 (5th Cir. 1981).
Similarly, reviewing courts in Georgia have held that a trial court is to conduct a two-step inquiry in these scenarios to determine whether the State must disclose an informant's identity. McGhee , 337 Ga. App. at 151, 786 S.E.2d 527. Under the Georgia test, the first inquiry addresses factors similar to those addressed by the Fifth Circuit, that is: (1) whether the confidential informant is an alleged informer-witness or informer-participant whose testimony appears to be material to the defense on the issue of guilt or punishment; (2) whether the testimony for the prosecution and the defense is or will be in conflict; and (3) whether the confidential informant was the only available witness who could amplify or contradict the testimony of these witnesses. Hernandez v. State , 291 Ga. App. 562, 569, 662 S.E.2d 325, 331 (2008). In Georgia, only after a trial court has determined that these factors weight in favor of disclosure is a trial court required to make a second, in camera inquiry to determine whether the informant's identity should be disclosed. McGhee , 337 Ga. App. at 151, 786 S.E.2d 527.
Regardless of the factors enumerated, what these cases do hold in common is the question of whether the informant was a "mere tipster" or whether the informant participated in the alleged crime. McGhee , 337 Ga. App. at 151, 786 S.E.2d 527 ; see Bourbois v. United States , 530 F.2d 3, 3 (5th Cir. 1976) ("The government is not required to disclose the identity of an informant who is a mere tipster and not an active participant in the offense charged."). This inquiry is not unlike Texas case law that has evolved from a similar inquiry regarding Rule 508 of the Texas Rules of Evidence and its predecessor, Texas Rule of Criminal Evidence 508. See Tex. R. Evid. 508. In these cases, the question of whether the State is required to disclose an informant's identity turns on whether the informant was an eyewitness to the alleged offense or merely provided information that ultimately led police to an arrest. See, e.g. , Washington v. State , 902 S.W.2d 649, 657 (Tex. App.-Houston [14th Dist.] 1995, pet. ref'd) (holding that the identity of informant whose information was used only to establish probable cause for search warrant did not need to be disclosed).
In line with the authorities discussed herein, we hold that the State is not required to disclose information about a confidential informant when that informant is a mere tipster who has not participated in the charged offense. In this case, we further hold that the informant was a mere tipster and the trial court did not err by not requiring disclosure of the identity of the informant or information regarding the informant's criminal history; thus, the State did not violate Brady by not disclosing information about the informant.
Here, the record shows that Detective Fitzgerald received a call from an informant who told him that Coleman was *634 in possession of methamphetamine and that he was riding his bike near Saint Andrews Church. Fitzgerald drove to the location, without the informant, and confronted Coleman. Although Coleman's and Fitzgerald's accounts of what transpired once Fitzgerald arrived at the church differ, there is no evidence in the record that, at the time Fitzgerald arrested Coleman, the informant was in any way participating in the charged offense-Coleman's methamphetamine possession. Even if the tipster had been wholly noncredible and unreliable, it would not change the fact that once Fitzgerald arrived at Saint Andrews Church, the entire interaction between Fitzgerald, Coleman, and any other authorities who arrived afterwards was completely divorced from the informant's tip and from the informant's presence. Again, we conclude that because the informant in this case was a mere tipster and not a participating witness in the crime of possessing methamphetamine, neither the State (by failing to learn the tipster's identity), nor the trial court (by denying Coleman's request for disclosure), violated Coleman's rights under Brady . See Bourbois , 530 F.2d at 3. Thus, we overrule this portion of Coleman's first issue.
II. Disclosure of Informant's Identity and the Michael Morton Act
In the remainder of his first issue, Coleman argues that the State violated "the Michael Morton Act by not disclosing the identity of the confidential informant and [by] not disclosing what Detective Fitzgerald knew about the confidential informant's criminal history as soon as practicable." Coleman also argues that the State had a definitive duty to seek out and discover this information. We disagree.
Under the current version of Article 39.14 of the Texas Code of Criminal Procedure (part of legislative revisions to the code known as "the Michael Morton Act"), once the State has charged the defendant with a crime, it has a duty to disclose to the defendant any exculpatory information that tends to negate the defendant's guilt. See Tex. Code Crim. Proc. Ann. art. 39.14 ; see also Brady , 373 U.S. at 87-88, 83 S. Ct. at 1196-97. Article 39.14 does not, however, give the trial court the authority to order the State to create a document that is not already in its possession, custody, or control. See In re State ex rel. Munk , 448 S.W.3d 687, 692 (Tex. App.-Eastland 2014, orig. proceeding) (construing former article 39.14 ); In re Watkins , 369 S.W.3d 702, 706-07 (Tex. App.-Dallas 2012, orig. proceeding) (same).[5]
In this case, the record demonstrates that the State[6] did not know the *635 identity of the informant, nor did it know about the informant's criminal history or past history of cooperating with Fitzgerald at the time Coleman made his Article 39.14 request. In fact, the record shows that the State learned information about the informant at the same time and in the same manner that Coleman did, namely, through the trial court's trickling disclosures from the in camera hearing. Thus, the State did not violate Coleman's Article 39.14 rights by not disclosing the identity and criminal history of the informant because the State had nothing to disclose to Coleman about the informant. We also hold that the State was not required to seek out this information for the defendant. See Palmer v. State , 902 S.W.2d 561, 563 (Tex. App.-Houston [1st Dist.] 1995, no pet.) ("The State has no duty to seek out exculpatory information independently on defendant's behalf.").[7] We thus overrule the remaining portion of Coleman's first issue.
III. Rule 508 and Nondisclosure of the Confidential Informant
In part of his second issue, Coleman argues that the trial court abused its discretion by not requiring the State to disclose the identity of the confidential informant under Rule 508. See Tex. R. Evid. 508. Again, we disagree.
We review the trial court's ruling on a motion to disclose the identity of a confidential informant under Rule 508 for an abuse of discretion. Ford v. State , 179 S.W.3d 203, 210 (Tex. App.-Houston [14th Dist.] 2005, pet. ref'd). The trial court's ruling will not be disturbed unless it falls outside the zone of reasonable disagreement. Id.
Generally, the State has a privilege to withhold the identity of any person who provided information relating to, or assisting in, the investigation of a possible crime. Tex. R. Evid. 508(a) ; see Ford , 179 S.W.3d at 210. If it appears from the evidence in the case, or from some other showing by a party, that an informant may be able to give testimony necessary to a fair determination of a material issue on guilt or innocence, and the State invokes the privilege, the judge must give the State an opportunity to show in camera facts relevant to determining whether the informant can, in fact, supply that testimony. Tex. R. Evid. 508(c)(2). A party requesting disclosure under Rule 508 has the threshold burden to demonstrate that the informant's identity must be disclosed. Bodin , 807 S.W.2d at 318. Before a court orders the identity of the informant to be revealed, the informant's potential testimony must be shown to significantly aid the defendant-mere conjecture about possible relevance is insufficient to meet the threshold burden. Id. A party seeking disclosure must make a plausible showing of how the informant's information may be important. See Abdel-Sater v. State , 852 S.W.2d 671, 674 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd). Only after a defendant makes a plausible showing is the trial court required to hold an in camera hearing to determine whether disclosure is necessary. Olivarez v. State , 171 S.W.3d 283, 292 (Tex. App.-Houston [14th Dist.] 2005, no pet.).
*636 Much like in the analysis in issue one regarding a claimed Brady violation, when it is shown that an informant was an eyewitness to an alleged offense, then the informant can give testimony necessary to a fair determination of the issues of guilt or innocence. Anderson v. State , 817 S.W.2d 69, 72 (Tex. Crim. App. 1991). But, if the informant's information was used only to establish probable cause for a search warrant or if the informant merely provided information that led police to investigate a potential offense and the informant was neither a participant in the offense for which the accused was charged nor present when a search warrant was executed or an arrest was made, then the identity of the informant need not be disclosed because the testimony is not essential to a fair determination of guilt or innocence. Ford , 179 S.W.3d at 210 ; see also Southwell v. State , 80 S.W.3d 647, 650 (Tex. App.-Houston [1st Dist.] 2002, no pet.) ("The informant merely provided information that indirectly led to the warehouse being placed under surveillance. The trial court correctly ruled that the informant's identity did not need to be disclosed by the State.").
Here, Coleman argues that because he showed that Detective Fitzgerald swore in his probable cause affidavit for an arrest warrant for Coleman that the impetus for looking for Coleman was the informant's information that he was in possession of methamphetamine, Coleman made a plausible showing that the informant's testimony or information may be important. More specifically, Coleman argues that no one else, other than Fitzgerald, could corroborate that Coleman was in possession of methamphetamine. Coleman further argues that the informant could have revealed whether Fitzgerald had "planted" the methamphetamine on him.
As to the probable cause affidavit, the law is clear that if an informant merely provides information leading to probable cause for a warrant, the informant's identity is not subject to disclosure. See Ford , 179 S.W.3d at 210. As to the argument that only the informant could corroborate that Coleman was in possession of methamphetamine when Fitzgerald approached him and asked him to empty his pockets, it is nothing more than mere speculation that the informant could have established whether Fitzgerald planted the methamphetamine on Coleman. Indeed, the informant was not present at the church when Fitzgerald encountered Coleman and therefore could not provide any information on whether Fitzgerald planted the raisin box on Coleman. All the informant could have testified to was whether the informant had seen Coleman with methamphetamine before Fitzgerald encountered him. The informant's testimony that Coleman was in possession of methamphetamine would actually have worked to increase the prosecution's quantum of proof in this case. Further, even though this court concludes that the trial court was not required to conduct an in camera hearing because Coleman did not make a plausible showing that the informant's testimony was important to the resolution of his case, the trial court did in fact conduct a hearing and revealed portions of the testimony of the hearing to the parties "out of an abundance of caution." And, we have examined the unredacted in camera testimony.
We conclude that the trial court was within the zone of reasonable disagreement when it determined that the State was not required to disclose the identity of the informant. The trial court therefore did not abuse its discretion in so ruling. We overrule this portion of Coleman's second issue.
*637 IV. Right to Confrontation
In the remainder of his second issue, Coleman argues that the trial court's denial of his motion to disclose the identity of the informant "deprived him of the right to confront his accuser under the Confrontation Clauses of the United States and Texas Constitutions." This argument is erroneous.
Other than citing Justice Harry Blackmun's concurring opinion in Pennsylvania v. Ritchie , 480 U.S. 39, 61-62, 107 S. Ct. 989, 1003, 94 L.Ed.2d 40 (1987), wherein he opined that "there might well be a confrontation violation if ... a defendant is denied pretrial access to information that would make possible effective cross-examination of a crucial prosecution witness," Coleman points to no authority that the nondisclosure of an informant's identity where the informant did not participate in the offense is a Confrontation Clause violation. Moreover, Coleman does not explain what witness he did not have the right to confront. Assuming that the witness he is arguing he could not confront is the informant, as discussed above, the informant was not a "crucial prosecution witness." Indeed, not only did the State not call the informant to testify, the State did not know the identity of the informant. If the "crucial prosecution witness" that Coleman is alluding to was Detective Fitzgerald, Coleman was given ample opportunity to confront Fitzgerald. And, even though the trial court was not required to conduct the in camera hearing, it did allow Coleman to eventually attempt to impeach Fitzgerald through testimony that he gave at the in camera hearing. We overrule the remainder of Coleman's second issue. See Bodin , 807 S.W.2d at 317.
V. The Trial Court's Allowing Coleman to Impeach Fitzgerald
In his third issue, Coleman argues that the trial court erred by not "timely" allowing him to impeach Detective Fitzgerald and that had he been allowed to impeach him earlier, he would have never testified in his own defense. Among its arguments, the State argues that the statements were not inconsistent and that the trial court did not abuse its discretion by not initially allowing Coleman to impeach Fitzgerald. On this issue, we agree with the State that the statements were not inconsistent.
As a reviewing court, we accord the trial court "wide discretion" regarding its decision to admit impeachment evidence. Theus v. State , 845 S.W.2d 874, 881 (Tex. Crim. App. 1992) ; Schmidt v. State , 373 S.W.3d 856, 862 (Tex. App.-Amarillo 2012, pet. ref'd). A trial court's decision whether to allow such impeachment evidence is reversed only when the trial court's decision lies outside the zone of reasonable disagreement. Schmidt , 373 S.W.3d at 862. To qualify for admission as a prior inconsistent statement, a party seeking to utilize the statement must demonstrate that "the statements are indeed inconsistent." Lopez v. State , 86 S.W.3d 228, 230 (Tex. Crim. App. 2002) ; Baldree v. State , 248 S.W.3d 224, 232 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd).
Here, none of the statements that Detective Fitzgerald made at the in camera hearing, during his initial trial testimony, or during his testimony when the trial court allowed Coleman to recall Fitzgerald to the stand are inconsistent. Indeed, the gist of Fitzgerald's testimony on all three occasions was that he had worked with the informant in the past; that at the time the informant tipped him off about Coleman's possession of methamphetamine, he was unaware whether the informant had a criminal history; and that he was aware that since Coleman's arrest the informant *638 had been arrested at least once.[8] Coleman attempts to isolate some of Detective Fitzgerald's testimony to show that he had testified inconstantly between the in camera hearing and his initial trial testimony, but a reading of the entire testimony demonstrates no inconsistency. Further, the trial court was not required to hold the in camera hearing, nor was the trial court required to reveal any of the testimony to the parties.[9]
Because the statements were not inconsistent, the trial court was well within the zone of reasonable disagreement when it initially denied Coleman's request to impeach Detective Fitzgerald. We overrule this portion of Coleman's third issue.
As to Coleman's contention that he would not have testified in his own defense had he been allowed to impeach Fitzgerald when he initially testified,[10] we conclude that this argument is without merit. We have held that the trial court did not abuse its discretion by not allowing Coleman to attempt to impeach Fitzgerald during his initial trial testimony. Because it was not error to prevent Coleman's desired line of questioning of Fitzgerald, we conclude that no reversible error impacted Coleman's choice to testify in his own defense. See James v. State , 725 S.W.2d 335, 336 (Tex. App.-Beaumont 1987, no pet.) (overruling defendant's argument that he would not have testified in his own defense if he had known of alleged exculpating evidence after determining that statements withheld by the State were not material to his defense). We overrule the entirety of Coleman's third issue.
VI. Improper Jury Argument at the Punishment Phase
In his fourth issue, Coleman argues that the trial court abused its discretion by overruling his objections to what he deems an improper jury argument made by the prosecutor during the punishment hearing. Coleman argues that he is entitled to a new trial on punishment because the improper argument affected a substantial right of his.[11] On this point, we are compelled to agree with Coleman.
To be permissible, jury argument must fall within one of the following *639 four general areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to argument of opposing counsel; and (4) plea for law enforcement. Brown v. State , 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (citing Alejandro v. State , 493 S.W.2d 230, 231 (Tex. Crim. App. 1973) ). Improper closing arguments include references to facts not in evidence or incorrect statements of law. Phillips v. State , 130 S.W.3d 343, 355 (Tex. App.-Houston [14th Dist.] 2004), aff'd , 193 S.W.3d 904 (Tex. Crim. App. 2006). Further, an argument that invites the jury to speculate whether the defendant has committed other crimes not in evidence is improper. See Ex parte Lane , 303 S.W.3d 702, 711-12 (Tex. Crim. App. 2009) ; Villarreal v. State , 576 S.W.2d 51, 64 (Tex. Crim. App. 1978). Finally, it is well-settled that it can be considered prosecutorial misconduct to make a matter-of-fact assertion that a defendant is a liar. Temple v. State , 342 S.W.3d 572, 597-98 (Tex. App.-Houston [14th Dist.] 2010) ("Accordingly, the prosecutor accused appellant of being a liar, not indirectly through a question, but as a matter-of-fact assertion. This action was clearly prosecutorial misconduct."), aff'd , 390 S.W.3d 341 (Tex. Crim. App. 2013).
In the closing argument in this case, the prosecutor's comments that Coleman had committed "another third-degree felony" by lying to the jury was not a summation of the evidence nor a reasonable deduction from the evidence. Moreover, the argument by the prosecutor was not a response to opposing counsel's argument, nor was the argument a plea for law enforcement. Rather, what the prosecutor's argument did, and why it is so troubling, was invite the jury to speculate on whether Coleman had committed the third-degree felony of aggravated perjury. See Tex. Penal Code Ann. § 37.03. But, the State had not put on any evidence that Coleman had committed perjury. See itation index="61" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2037.03">id. §§ 37.02(a), 37.03(a). We must conclude and hold that the prosecutor's comments that Coleman had committed "another third-degree felony" by lying to the jury-implying that Coleman could be charged with or was guilty of aggravated perjury-were improper.
Even when a jury argument was improper, we will not reverse a trial court's erroneous overruling of a defense objection unless the error affected the defendant's substantial rights. Tex. R. App. P. 44.2(b) ; Martinez v. State , 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000). To determine if a defendant's substantial rights were affected and if he therefore suffered harm from an improper jury argument, we consider the following factors: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of the punishment assessed absent the misconduct. Threadgill v. State , 146 S.W.3d 654, 666-67 (Tex. Crim. App. 2004) ; Martinez , 17 S.W.3d at 692-93 ; Mosley v. State , 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).
As to the first factor, when considering the severity of the prosecutor's misconduct, we must examine the prejudicial effect of his remarks. Mosley , 983 S.W.2d at 259. These remarks should be considered in light of the purpose of closing argument itself. That purpose is "to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone[ ] and not on any fact not admitted in evidence." Campbell v. State , 610 S.W.2d 754, 756 (Tex. Crim. App. [Panel Op.] 1980) (internal quotation marks and citation omitted).
Here, the prosecutor's argument did not advance a legitimate purpose. Arguing *640 to the jury that Coleman could be charged with an "additional third-degree felony" because he allegedly lied to them invited speculation as to what charges might be brought against Coleman in the future. Inviting such speculation could only propel the jury further in the direction of finding Coleman deserving of a lengthy sentence.[12] Cf. Berryhill v. State , 501 S.W.2d 86, 87 (Tex. Crim. App. 1973) ("[I]nviting speculation is even more dangerous [than injecting matters not in the record] because it leaves to the imagination of each juror whatever extraneous 'facts' may be needed to support a conviction."). Accordingly, this first factor weighs in favor of finding harm.
As to the second factor, we consider the efficacy of any cautionary instruction from the trial judge. See Mosley , 983 S.W.2d at 259. In this case, the trial court overruled each of Coleman's objections. When a trial court overrules an objection to an improper argument, it implicitly places its "imprimatur" on the argument, thereby magnifying the harm. See Good v. State , 723 S.W.2d 734, 738 (Tex. Crim. App. 1986) ; Mayberry v. State , 830 S.W.2d 176, 179 (Tex. App.-Dallas 1992, pet. ref'd). It also must be noted that after each of Coleman's objections, the prosecutor continued to emphasize that Coleman had lied to the jury.
Instructive on this point is Orona v. State , in which the Texas Court of Criminal Appeals discussed the importance of the emphasis the State placed on an improper argument. 791 S.W.2d 125, 130 (Tex. Crim. App. 1990). There, the State made only a passing remark and abandoned the argument after the trial court overruled the defense's objection. Id. at 129. The Court explained that because the comment was made in passing and was not reinforced or emphasized by the State, the probable impact on the jury was minimal, if any. Id. But, the Court specifically stated that "[i]f the State had sought to advance its argument after the objection, then the opposite result might be necessary." Id. at 130.
Unlike the prosecutor in Orona , in the present case, after each time the trial court overruled Coleman's objection, the prosecutor continued to advance and emphasize the same prejudicial argument that Coleman had committed aggravated perjury. Because the prosecutor repeatedly emphasized this improper argument, it is likely that the jury placed substantial weight on this argument in their deliberations. See Holliman v. State , 879 S.W.2d 85, 88-89 (Tex. App.-Houston [14th Dist.] 1994, no pet.) (reasoning that because State emphasized improper jury argument after trial court overruled defense's objection, the jury likely gave undue weight to prosecutor's argument). Because there were no curative instructions given by the trial court; because the trial court overruled Coleman's objections, thereby sanctioning the argument;[13] and because the prosecutor emphasized and repeated the improper argument, this factor also weighs in favor of finding harm.
As to the third factor, the certainty of punishment, the State's punishment case was fairly strong, but the State did not put on any evidence to indicate that Coleman was deserving of a 99-year sentence.
*641 Indeed, the evidence offered during the punishment phase demonstrated that although Coleman had previously been convicted of possession and possession with intent to distribute he had never served a term of incarceration longer than three years. Under the unique facts of this case, we conclude that this factor is neutral.
To recap, the first two factors weigh in Coleman's favor, and the third, given the unique facts of this case, is neutral at best. We determine that the prosecutor's argument was prejudicial because it encouraged the jury to consider that Coleman had committed an additional, third-degree felony that the State had not proven. The trial court magnified this harm by overruling Coleman's objections, thereby giving its stamp of approval to the prosecutor's improper argument, and the prosecutor continued to emphasize the improper argument after Coleman's objections. Finally, the State's punishment evidence, while strong, did not demonstrate that Coleman would receive such a lengthy sentence. We therefore hold that the trial court should have sustained Coleman's objections, and we hold that its failure to do so was harmful.
CONCLUSION
Having overruled Coleman's first three issues but having sustained his fourth issue, we affirm the trial court's judgment of conviction, but we reverse the judgment as to punishment and remand this case back to the trial court for a new punishment trial. See Tex. R. App. P. 43.2(d), 43.3 ; see also Tex. Code. Crim. Proc. Ann. art. 44.29(b).

Detective Fitzgerald's partner testified that by the time he arrived on the scene, the methamphetamine was already on Fitzgerald's hood.

During the sentencing phase, the jury also heard testimony from Stephanie Howard, Coleman's friend who lives at the same camp he does in Denton. Howard described Coleman as a "very, very giving" person, "very nice," and "[v]ery honest."

We acknowledge that the Texas Court of Criminal Appeals has addressed Texas Rule of Evidence 508 's predecessor (former Rule of Criminal Evidence 508 ) and recognized that the former Rule 508 (establishing the State's privilege regarding disclosure of confidential-informant information) comports with the Supreme Court of the United States' decision in Roviaro v. United States , 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639 (1957) (recognizing the informer-identity privilege). See Bodin v. State , 807 S.W.2d 313, 317 (Tex. Crim. App. 1991).
Moreover, this court has found at least one Texas case that addresses whether the failure to disclose an informant's criminal history is a Brady violation. See Horn v. State , No. 12-13-00230-CR, 2014 WL 2505587, at *3 (Tex. App.-Tyler May 30, 2014, pet. ref'd) (mem. op., not designated for publication). But, Horn is distinguishable. In Horn, the court concluded that the State did not violate Brady for failing to disclose an informant's criminal history. Id. However, its holding was predicated on the facts that the State had allowed Horn to review the State's file and the information that Horn asked to be disclosed was readily available to him in the file; thus, the State had not violated Brady . Id. Horn does not directly address the issue in this case, nor does Horn address what type of analysis is to be conducted when weighing the rights of a defendant under Brady versus the State's privilege not to disclose the identity of its informants. See itation index="84" url="https://cite.case.law/citations/?q=2014%20WL%202505587">id.

We note that the Texas Court of Criminal Appeals, in an unpublished order, arrived at the same conclusion. See In re Stormer , No. WR-66865-01, 2007 WL 1783853, at *3 (Tex. Crim. App. June 20, 2007) (order not designated for publication) (stating that article 39.14 "is specifically limited to the discovery of pre-existing documents and tangible items that are in the State's possession" and does not give the trial court the authority to order the State "to create a document that does not currently exist").

According to the Texas Rules of Appellate Procedure, we use the term "State" here to describe the prosecution who is adverse to Coleman, the appellant in this appeal. See Tex. R. App. P. 3.2 ("In documents filed in criminal appeals, the parties are the State and the appellant. ") (emphasis in original). We do not use the term "State" to describe all possible state actors, including courts, departments, or law enforcement officials. Our use of this term is consistent with cases that have analyzed similar Article 39.14 issues. Indeed, it is not uncommon for a trial court to deny a defendant's request for information held by an entity other than the prosecution. See In re Munk , 448 S.W.3d at 690 ("We agree ... that requiring the State to conduct searches for criminal histories in computer databases involves the creation of documents that do not currently exist and are not in the State's possession.").

Because we hold that neither the State nor the trial court violated Coleman's rights under Brady and that the State had nothing to disclose under the Michael Morton Act, we need not analyze Coleman's argument that he was denied the opportunity to present a complete defense. See Tex. R. App. P. 47.1.

We suspect that the confusion regarding what Detective Fitzgerald testified to in the in camera hearing can be ascribed to the trial court's letter to the parties indicating that Fitzgerald said that he knew that the informant "from time to time had criminal cases." A thorough review of the record from the in camera hearing reveals that Fitzgerald made no such statement.

It is perplexing why the trial court determined to selectively drip information from the in camera hearing to the parties in this case. Doing so seems to go against the entire reason for the privilege of nondisclosure. By the time of this appeal, both parties had copious amounts of information regarding the informant that the State was entitled to keep privileged.

Coleman's complaint that he would not have testified had he known that Detective Fitzgerald would have been called to the stand a second time and questioned about his earlier testimony related to the informant rings hollow. Coleman did not bring this complaint to the trial court's attention until the day following the trial court's allowing Coleman to call Detective Fitzgerald to the stand for the second time and the jury's returning the guilty verdict. In fact, Coleman did not lodge an objection at either time Detective Fitzgerald testified at trial.

We disagree with the State's cursory argument that Coleman failed to preserve error on this issue. Our review of the record unequivocally reveals that Coleman's attorney objected to the alleged improper jury argument and the trial court overruled each objection. Allegations that a defendant failed to properly preserve error are not rubber bands that can be stretched and used as a default response to each and every argument presented on appeal.

For example, although not objected to, the prosecutor concluded his closing argument by stating, "This may have started as a minimum case. He deserves some extra time for lying to you[.]" These types of seemingly stray remarks can be unnecessarily inflammatory.

Not only did the trial court not give a curative instruction, the trial court ruled, in front of the jury in open court, that Coleman's objection was "improper," which also would have contributed to the trial court's stamp of approval of the prosecutor's argument.