

# NUMBER 13-19-00505-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JOSE ANGEL MATAMOROS,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

---

### On appeal from the 186th District Court
### of Bexar County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Jose Angel Matamoros appeals his conviction for possession with intent to deliver 400 or more grams of cocaine, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a), (f). By two issues, Matamoros argues the trial court erred when it (1) denied his motion to disclose the identity of a confidential informant

(CI), and (2) refused to include an article 38.23 instruction in the jury charge. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23. We affirm.

## I.  BACKGROUND[1]

On April 13, 2018, Matamoros was arrested after he, Chris Ramirez, and Jerry Sanchez attempted to sell a kilogram of cocaine to two undercover officers of the San Antonio Police Department, Fares Khalaf and George Hernandez. Matamoros pleaded not guilty and filed a motion seeking disclosure of the identity of the police's CI. The trial court denied the motion prior to trial based on the State's representations.

At trial, Hernandez and Khalaf testified that the CI informed them that individuals trying to sell large amounts of cocaine were coming into San Antonio, and the CI arranged for the officers to meet the sellers in the parking lot of an Ojos Locos restaurant. Hernandez and Khalaf arranged to carry out an undercover operation with other officers and went to Ojos Locos posing as buyers. In the restaurant parking lot, Hernandez and Khalaf met Sanchez, who told them the drugs were still on the way. Khalaf showed Sanchez a bundle of cash, Sanchez "immediately got on the phone," and the officers left. About an hour later, the CI called the officers and informed them that the deal was on and to go back to Ojos Locos.

The officers returned to the restaurant and encountered Sanchez with Matamoros, Ramirez, and a minor relative of Matamoros, as well as two vehicles. The sellers informed Khalaf and Hernandez that they needed a socket wrench to complete the transaction,

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

and the parties went to a nearby Walmart for the sellers to purchase one. The parties then agreed to go to a nearby motel to finalize the deal. Once the parties parked in the motel parking lot, Hernandez and Khalaf signaled for other officers to descend on the location and arrest all the parties. After a K-9 signaled to police that narcotics were present in both vehicles, the officers obtained a search warrant[2] and used the socket wrench to retrieve a kilogram of cocaine from a compartment located under the hood of the Mustang driven by Ramirez and Sanchez.

After the testimony of Khalaf, the trial court noted:

I'm going to have a hearing in regards to the Defense Motion to Require Disclosure of the Informers. And earlier, before we started the trial, I had said that I was not going to have any type of hearing because the information I had at the time was that the confidential informant really didn't know anyone, just let the detectives know that there was going to be a buy coming up. Since that time I've learned from Detective Hernandez that the CI had set up—and when I say "CI," I mean the confidential informant—that he had set up for three kilos at thirty-one thousand dollars each. And if the deal goes well, then nine more kilos would be on the way. And then Detective Khalaf, who's still here on the stand, said after their first encounter at Ojos Locos and where they all left, the CI had called Detective Khalaf back and said that they should go back to Ojos Locos because the deal was going to happen, even though they weren't really confident of that.

Now, under Texas Rule of Evidence 508[(c)(2)(A)], in a criminal case the privilege that's been asked for by the State doesn't apply if the court finds that there's reasonable probability to exist. The informer can give necessary—or give testimony necessary to a fair determination of guilt or innocence.

I still don't believe that that's the case here. I just wanted to address on the record, though, that new information came up since my earlier ruling that I need to address that. . . .

And I still don't think we have that issue here because I don't see where the confidential informant was at this transaction. However, because of the

---

[2] Matamoros argues that the officers searched the vehicle prior to the K-9 sniff and the warrant being issued.

information that I'm hearing that the confidential informant is the one that's calling Detective Khalaf and saying, Go back there. They are going to effect this deal. I think he is—he may be part of this transaction in some regard.

So, out of an abundance of caution, I'm going to have the in camera, on my own motion, the in camera hearing with Detective Khalaf to explore this issue and at least put it on the record. I'm going to order . . . that portion of the record be sealed by the court reporter only for appellate purposes.

The trial court then held an in-camera hearing, after which the trial court found that

this CI is not going to be able to give testimony for fair determination of guilt or innocence, and that the CI—I am satisfied . . . that the CI is reasonably reliable and that the defendant has the threshold burden of just demonstrating that the identity must be disclosed . . . but I don't have a plausible showing from the defense that this particular CI would be important in testifying in regards to the guilt or innocence of [Matamoros]. And so I am not going to disclose the confidential informant.

The jury found Matamoros guilty of the offense, and the trial court assessed punishment at thirty years' imprisonment in the Texas Department of Criminal Justice Institutional Division and a $10,000 fine. This appeal followed.

## II.    MOTIONS FOR ACCESS TO SEALED RECORD

First, we address Matamoros's motions asking us to (1) unseal the reporter's record from the in-camera hearing, and (2) provide copies of the sealed reporter's record to appellate counsel for appellant and appellee.

Texas Rule of Evidence 508 provides that the trial court "must seal and preserve for appeal" the record from an in-camera hearing concerning the identity of an informer. TEX. R. EVID. 508(c)(2)(C)(iii). The rule further provides that "[t]he evidence must not otherwise be revealed without the public entity's consent." *Id.*

Here, the public entity asserting the privilege—the State—has not consented to allowing Matamoros access to the sealed record. *See id.* And while the rule makes the

4

evidence from the in-camera hearing available to us as the appellate court, that does not include making the evidence available to an appellant for appeal preparation. *See id.*

Unsealing the record of the in-camera hearing would expose informants to detection and defeat the public policy behind the rule. *See Bodin v. State*, 807 S.W.2d 313, 316 (Tex. Crim. App. 1991) (discussing public policy behind the privilege protecting the identity of informers). We decline Matamoros's request to depart from the text of the rule and deny his two motions. *See, e.g.*, *Southwell v. State*, 80 S.W.3d 647, 648–49 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (rejecting appellant's motion to unseal record of in-camera hearing).

### III.    DISCUSSION

By his first issue, Matamoros argues the trial court erred when it denied his motion to disclose the CI's identity.

### A.    Standard of Review & Applicable Law

We review the trial court's ruling on a motion to disclose the identity of a CI under Rule 508 for an abuse of discretion. *State v. Dunn*, 611 S.W.3d 176, 179 (Tex. App.—Houston [14th Dist.] 2020, no pet.). A trial court abuses its discretion if its decision is so clearly wrong that it falls outside the zone of reasonable disagreement. *Id.*

Generally, the State has a privilege to withhold the identity of any person who provided information relating to, or assisting in, the investigation of a possible crime. *Id.*; *see* TEX. R. EVID. 508(a). However, this privilege does not apply if a trial court finds there is a reasonable probability that the informant can give testimony necessary to a fair determination of guilt or innocence. TEX. R. EVID. 508(c)(2)(A); *Anderson v. State*, 817

5

S.W.2d 69, 72 (Tex. Crim. App. 1991); *see Abdel-Sater v. State*, 852 S.W.2d 671, 674 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

Before a court orders the identity of the informant to be revealed, the informant's potential testimony must be shown to significantly aid the defendant; mere conjecture about possible relevance is insufficient to meet the threshold burden. *Bodin*, 807 S.W.2d at 318; *see Dunn*, 611 S.W.3d at 179 ("A party seeking disclosure must make a plausible showing of how the informant's information may be important."). The burden to demonstrate that the informant's identity must be disclosed is on the defendant. *See Bodin*, 807 S.W.2d at 318.

An informant can give testimony necessary to a fair determination of the issues of guilt or innocence if the informant participated in the offense, was present at the time of the offense or arrest, or was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the offense charged. *See Anderson*, 817 S.W.2d at 71; *Coleman v. State*, 577 S.W.3d 623, 636 (Tex. App.—Fort Worth 2019, no pet.); *Haggerty v. State*, 429 S.W.3d 1, 8 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). But when an informant's information was used only to establish probable cause for a search warrant or merely provided information causing police to investigate a potential offense, and the informant was neither a participant in the offense for which the defendant was accused nor present when a search warrant was executed or an arrest made, then the identity of the informant need not be disclosed because the testimony is not essential to a fair determination of guilt or innocence. *See Dunn*, 611 S.W.3d at 180; *Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

6

**B.    Analysis**

Matamoros argues that the trial court should have revealed the CI's identity because the CI "actively participated" in the offense and the CI "contributed more than a 'mere tip' in this case [because the] informer actively brokered the entire transaction." Specifically, Matamoros argues the informer did so by "(1) setting up the location and times for both meetings at Ojos Locos, (2) determining and conveying the price and amount of drugs that would be involved[,] and (3) actively serving as the detectives 'middleman' until . . . all the other participants arrived."

Here, there is evidence that the CI communicated information to the officers and Sanchez arranging for them to meet at Ojos Locos to negotiate the purchase of the cocaine. However, even though the CI set up the narcotics transaction and provided information that led police to investigate a potential offense, the CI was not present at any time nor did the CI participate or witness any law enforcement activities. We have reviewed the sealed record of the in-camera hearing, and we note it supports the trial court's ruling. Furthermore, while the CI was in contact with Sanchez, there is no evidence that the CI was ever in contact with Matamoros. Therefore, the CI's testimony was not essential to a fair determination of guilt or innocence. *See Coleman*, 577 S.W.3d at 636; *Haggerty*, 429 S.W.3d at 8; *Ford*, 179 S.W.3d at 210. We cannot conclude that the trial court abused its discretion when it denied Matamoros's motion to disclose the CI's identity. *See* Tex. R. Evid. 508; *Bodin*, 807 S.W.2d at 318; *Ford*, 179 S.W.3d at 210; *see also Garcia v. State*, No. 01-18-00974-CR, 2020 WL 4118019, at *3 (Tex. App.—Houston [1st Dist.] July 21, 2020, no pet.) (mem. op., not designated for publication) ("[W]e

conclude that the facts herein are more in line with those cases in which . . . the disclosure of the informant's identity was not required, even though the informant set up the narcotics transaction, because the informant did not witness or otherwise participate in the offense."); *Cannady v. State*, No. 01-03-00466-CR, 2004 WL 1119951, at *2-3 (Tex. App.—Houston [1st Dist.] May 20, 2004, no pet.) (mem. op., not designated for publication) (concluding the trial court did not abuse its discretion by denying motion to disclose when informant called a friend of defendant to set up meeting place for narcotics transaction, but stayed in the vehicle and did not see any portion of the transaction between officer and defendant).

Matamoros's first issue is overruled.

## IV.    JURY CHARGE

By his second issue, Matamoros argues the trial court erred when it denied his request for an article 38.23 instruction in the jury charge.

## A.    Applicable Law & Standard of Review

A trial court must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or not credible. *Krajcovic v. State*, 393 S.W.2d 282, 286 (Tex. Crim. App. 2013); *see also* TEX. PENAL CODE ANN. § 2.03(c) ("The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense."). Article 38.23 of the code of criminal procedure provides that

> No evidence obtained by an officer or private person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the

8

legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

"A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To be entitled to the submission of jury instructions under article 38.23(a), a defendant must meet three requirements: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510.

## B.    Analysis

Matamoros argues the trial court erred when it denied him an instruction regarding whether the search of the vehicle containing the drugs occurred before or after the K-9 alerted the officers that there were narcotics in both vehicles. According to Matamoros, an article 38.23 instruction was required "because affirmative evidence—from the State's own paid witnesses—raised a factual dispute material to deciding the lawfulness of the search of the Black Mustang." Specifically, Matamoros argues that there were "conflicting accounts of when the warrant in this case was signed in relation to when [the K-9] alerted at the [motel]. And, depending on how those conflicts were resolved, a jury could have rationally found that the substance at issue here was found incident to an unreasonable search." In essence, Matamoros argues that, if the factual dispute was resolved in his

9

favor, then the officers performed a warrantless search, and the evidence seized should be disregarded. However, the contested factual issue—whether the search occurred before or after the K-9 sniffed the cars—is not material to the lawfulness of the challenged conduct (the search of the Mustang). *Id.* at 510. This is because probable cause existed to search the Mustang before the K-9 sniff, and the officers therefore did not need a warrant to search the vehicles.

Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011); *see* U.S. CONST. amend. IV, XIV; *Marcopoulos v. State*, 538 S.W.3d 596, 599 (Tex. Crim. App. 2017); *see also* TEX. CONST. art. I, § 9. "The automobile exception allows for the warrantless search of an automobile 'if it is readily mobile and there is probable cause to believe it contains contraband.'" *Marcopoulos*, 538 S.W.3d at 599 (quoting *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009)). Therefore, an officer may conduct a warrantless search of a motor vehicle if the officer has probable cause to believe that the vehicle contains evidence of a crime. *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994).

Probable cause exists when the facts and circumstances within the knowledge of the officer would lead a person of reasonable caution and prudence to believe that the instrumentality of a crime or evidence will be found within the vehicle. *Ballard v. State*, 897 S.W.2d 889, 892 (Tex. Crim. App. 1999). Probable cause is determined from a totality of the circumstances. *Eisenhauer v. State*, 678 S.W.2d 947, 952 (Tex. Crim. App. 1982).

Whether probable cause exists is a question of law we review de novo. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Here, the evidence showed, at the time the officers descended on the sellers and arrested Matamoros, that: (1) the officers had information from a reliable CI that individuals were bringing a large amount of cocaine to San Antonio looking to sell it; (2) Khalaf and Hernandez met Sanchez at Ojos Locos where they discussed and negotiated the purchase of a kilogram of cocaine; (3) an hour later, Matamoros, Sanchez, and Ramirez met with the officers at Ojos Locos with two vehicles, continued the negotiations, and informed the officers they needed a socket wrench to retrieve the cocaine; (4) Matamoros, Sanchez, and Ramirez then purchased a socket wrench at a nearby Walmart while the officers waited outside; (5) the officers were aware that it is common for sellers of large amounts of narcotics to use multiple vehicles when transporting the narcotics and for the narcotics to be hidden in the vehicles; (6) Matamoros, Sanchez, and Ramirez agreed with the officers to go to a nearby motel to count the money and wait for the arrival of an additional two kilograms of cocaine; and (7) Matamoros expressed concern to Khalaf and Hernandez about completing the transaction in the parking lot because a helicopter could be seen in the sky. Matamoros does not challenge or address any of this evidence, and this evidence would enable a person of reasonable caution and prudence to believe that cocaine would be found within the Mustang. *See Ballard*, 897 S.W.2d at 892. Based on the totality of these circumstances, we conclude that the officers had probable cause to search the vehicles at the time the parties arrived at the motel and the undercover police officers swarmed in

11

and arrested the sellers. *See Garcia v. State*, 327 S.W.3d 243, 248 (Tex. App.—San Antonio 2010, no pet.). Therefore, whether the search was conducted before or after the K-9 sniff was not material to the legality of the search that uncovered the cocaine, *see Madden*, 242 S.W.3d at 510, and Matamoros was not entitled to an article 38.23 instruction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Madden*, 242 S.W.3d at 509–10.

We overrule Matamoros's second issue.

**V. CONCLUSION**

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
10th day of June, 2021.